[No. D050719. Fourth Dist., Div. One. Jan. 23, 2009.]

JAMES W. CRISTLER et al., Plaintiffs and Appellants, v.
EXPRESS MESSENGER SYSTEMS, INC., et al., Defendants and
Respondents.
BARRY NEWMANN, Plaintiff, v.
EXPRESS MESSENGER SYSTEMS, INC., et al., Defendants.

**COUNSEL**

Pope, Berger & Williams, A. Mark Pope, Aaron A. Hayes; Boudreau Williams and Jon R. Williams for Plaintiffs and Appellants.

Littler Mendelson, Robert G. Hulteng and Damon M. Ott for Defendants and Respondents.

**OPINION**

**IRION, J.**—James W. Cristler, John Purves, James G. Harrod, Sydney Moroff and Mark Lambert, individually and as the representative of a class of similarly situated persons (collectively Cristler), sued a parcel delivery company, Express Messenger Systems, Inc., doing business as California Overnight (Express Messenger). The lawsuit contained a number of causes of

action, all based on a core contention that Express Messenger improperly classified its employees as independent contractors. The case was litigated before a jury and, with respect to certain claims, a trial court. Express Messenger prevailed.

Cristler appeals, contending that the trial court erred in a number of respects. Cristler argues that the trial court (i) abused its discretion by failing to amend the class definition in light of developments subsequent to class certification; (ii) erred in instructing the jury as to both the burden of proof and with respect to the pertinent classification factors that distinguish employees from independent contractors; (iii) applied incorrect legal standards in adjudicating Cristler's unfair and unlawful business practices causes of action; (iv) abused its discretion by allowing the introduction of irrelevant and "inflammatory" evidence as to the relative benefits of independent contractor status; and (v) erroneously permitted Express Messenger to recover costs for the production of exhibits that were not used at trial. As discussed below, we conclude these contentions are without merit and affirm.

## FACTS

Express Messenger is a regional overnight package delivery company with operations in California. Express Messenger's delivery system consists of a number of large hubs and local facilities that collect, sort and route packages for next day delivery.

In December 2002, Express Messenger discontinued its system of using employee drivers to perform local pickup and delivery work in California and implemented a program designed to switch the majority of its employee drivers to independent contractor status. Express Messenger hired Subcontracting Concepts, Inc. (SCI), to facilitate this change.

Drivers who elected to continue working with Express Messenger after the change entered into written independent contractor agreements with SCI to perform delivery services for Express Messenger. The drivers then bid on available routes and negotiated a route management fee with Express Messenger.

In December 2004, Cristler filed a complaint against Express Messenger on behalf of the drivers and other similarly situated employees/independent contractors of Express Messenger. In the complaint, Cristler alleged causes of

action for: (1) unfair and unlawful business practices in violation of Business and Professions Code section 17200; (2) failure to pay overtime compensation in violation of Labor Code[1] sections 510, 515, and 1194; (3) failure to provide properly itemized wage statements in violation of section 226; (4) failure to fully compensate for business expenses in violation of section 2802; and (5) wrongful termination in violation of public policy. All of the causes of action arose from a core contention that Express Messenger's classification of its delivery personnel as "independent contractors" was improper because the drivers were, in fact, "employees" under California law.

At the outset of the litigation, the trial court granted Cristler's motion to pursue the litigation as a class action. The case was then tried to a jury in January 2007. At the conclusion of the trial, the jury returned a special verdict, finding that "the drivers in the Plaintiff-Class are Independent Contractors," not employees. As a result of the special verdict, the class members' claims with respect to failure to pay overtime compensation, failure to provide properly itemized wage statements and failure to fully compensate for business expenses were denied. The trial court then independently determined that the remaining causes of action for unfair and unlawful business practices, and unlawful termination were without merit and entered judgment in favor of Express Messenger.

## DISCUSSION

Cristler raises a number of challenges to the trial proceedings. Prior to addressing these contentions we set forth some background legal principles regarding the distinction under California law between independent contractors and employees, which informs our subsequent discussion.

### I.

#### *Legal Principles Regarding Classification of Independent Contractors and Employees*

(1) Employers have varying responsibilities with respect to persons performing services on their behalf. These responsibilities depend, in part, on whether those persons are classified as employees or independent contractors under the Labor Code. (See, e.g., §§ 2802 [indemnification for work-related

---

[1] All further statutory references are to the Labor Code unless otherwise specified.

expenses], 3700 [workers' compensation coverage], 510, 515, 1194 [overtime compensation]; Unemp. Ins. Code, §§ 13020, 13021 [income tax withholding].) The Labor Code defines " '[e]mployee[s]' " to include virtually all persons "in the service of an employer under any . . . contract of hire" (§ 3351), but specifically excludes "independent contractor[s]" (§ 3357). An independent contractor is defined as "any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." (§ 3353.)

■ Due to the numerous variables that can inform the employee/ independent contractor distinction, our Supreme Court has supplemented these statutory definitions with a host of classification factors. In doing so, the court has consistently emphasized, in keeping with the statutory definition, that "the most important factor is the right to control the manner and means of accomplishing the result desired." (*Empire Star Mines Co. v. Cal. Emp. Com.* (1946) 28 Cal.2d 33, 43–44 [168 P.2d 686] (*Empire Star Mines*).) The court has also stated that "[s]trong evidence in support of an employment relationship is the right to discharge at will, without cause," and that "[o]ther factors to be taken into consideration are (a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee." (*Ibid.*, citing Rest.2d Agency, § 220.)

This early discussion in *Empire Star Mines* was later summarized with approval in *Tieberg v. Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943 [88 Cal.Rptr. 175, 471 P.2d 975] (*Tieberg*), which listed the same factors and reiterated that "[t]he right to control the means by which the work is accomplished is clearly the most significant test of the employment relationship and the other matters enumerated constitute merely 'secondary elements.' " (*Id.* at p. 950, citing Rest.2d Agency, § 220.)

■ Most recently, in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 [256 Cal.Rptr. 543, 769 P.2d 399] (*Borello*), the court cited *Tieberg, Empire Star Mines* and the Restatement Second of Agency in again listing these considerations as the pertinent classification factors. (*Borello*, at pp. 350–351.) While *Borello* discussed the

pertinent factors as they applied to certain cucumber harvesters, it emphasized "[w]e adopt no detailed new standards for examination of the issue. To that end, the Restatement guidelines heretofore approved in our state remain a useful reference." (*Id.* at p. 354,) And "[e]ach service arrangement must be evaluated on its facts, and the dispositive circumstances may vary from case to case." (*Borello*, at p. 354; see also *Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 10 [64 Cal.Rptr.3d 327] (*Estrada*) [citing *Borello* in listing pertinent factors that mirrored the instruction in the instant case]; *Air Couriers Internat. v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 936 [59 Cal.Rptr.3d 37] (*Air Couriers*) [recognizing that "*Borello* set forth *exactly* the same secondary factors to be considered in addition to the issue of control that were enumerated in" the earlier case law and "explicitly declined to adopt 'detailed new standards for examination of the issue' "].)

■ *Borello*'s caveats reflect that "[t]he determination of employee or independent-contractor status is one of fact . . . ." (*Borello, supra,* 48 Cal.3d at p. 349.) As a result, appellate case law in this area arises primarily in the context of substantial evidence review of the determinations of the relevant fact finder. (See *Tieberg, supra,* 2 Cal.3d at pp. 946, 952 [finding substantial evidence to support trial court's conclusion, on writ of mandate review of director of employment's decision to the same effect, that writers were employees of Lassie Television]; *Empire Star Mines, supra,* 28 Cal.2d at p. 36 [affirming trial court's conclusion that the California Employment Commission erred in labeling certain miners independent contractors]; *Borello,* at pp. 348–349 [upholding trial court's ruling (after Court of Appeal reversal) that Division of Labor Standards Enforcement properly labeled cucumber harvesters employees rather than independent contractors]; *Estrada, supra,* 154 Cal.App.4th at pp. 4, 11 [upholding trial court's finding that certain delivery personnel were employees as supported by substantial evidence]; *Air Couriers, supra,* 150 Cal.App.4th at p. 937 [upholding trial court's finding that drivers were employees as supported by substantial evidence].) Consequently, as is generally the case, appellate courts have no authority to simply second-guess the conclusion reached by the fact finder; instead, the substantive "determination (employee or independent contractor) is one of fact and thus must be affirmed if supported by substantial evidence." (*Estrada,* at p. 11.)[2]

---

[2] Cristler emphasizes throughout its briefing that *other cases* addressing the proper classification of package delivery drivers have resulted in findings that the drivers were employees, rather than independent contractors. (See *Estrada, supra,* 154 Cal.4th at pp. 11–12 [reciting litany of factors that provided substantial evidence to support trial court's finding that FedEx drivers were employees, including "FedEx's control over every exquisite detail of the drivers' performance, including the color of their socks and the style of their hair"]; *JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1065 [48 Cal.Rptr.3d 563] [listing factors that provided substantial evidence for trial court's conclusion that drivers were employees and thus "reject[ing] JKH's contention" that the evidence "dictate[d] but one

## II.

### Cristler Has Not Carried Its Burden of Demonstrating That the Trial Court Abused Its Discretion in Declining to Amend the Class Definition

Cristler first contends that the trial court abused its discretion "by neglecting its duty to continuously monitor class certification and refusing to amend or modify the class definition." (Capitalization omitted.) Specifically, Cristler argues the trial court should have narrowed certain exemptions to the class definition to ensure that the definition did not needlessly exclude otherwise eligible class members and that class membership was not manipulated by Express Messenger.

### A. Procedural History Regarding Class Certification

In granting Cristler's motion to pursue the litigation as a class action, the trial court defined the class, consisting of two subclasses, as follows: "1. The independent driver subclass[:]

"All persons classified as independent contractors who have worked as drivers, messengers, delivery drivers, or route drivers for Express Messenger Systems, dba California Overnight in the State of California between November 30, 2002, and the present time, and who used their personal vehicles with Gross Vehicle Weight Ratings of less than 10,000 lbs. in the course and scope of their work."

"Excluded from the class are the following categories of persons or entities: 1) Contractors (including partnerships, limited partnerships, corporations, and limited liability companies) who utilized their own employees and/or subcontractors, 2) the employees or subcontractors of such contractors, and 3) Contractors who simultaneously provided pickup or delivery services to [California] Overnight and one or more package delivery services."

"2. The terminated employee driver subclass[]:

---

conclusion here—that the drivers are independent contractors"]; *Air Couriers, supra,* 150 Cal.App.4th at p. 938 [same].) The simple answer to these references is that these cases concerned different circumstances presented to a different finder of fact. Indeed, even if the facts of this case were *identical* to those in the cases Cristler cites (and they are not), we would not be authorized to overrule the determination of the jury to achieve conformity with other cases—particularly as Cristler does not even argue that the jury's verdict is unsupported by substantial evidence.

"All persons classified as employees who have worked as drivers, messengers, delivery drivers, or route drivers for Express Messenger Systems, dba California Overnight in the State of California who were terminated or resigned their employment solely because of California's [*sic*] Overnight's reclassification of drivers as independent contractors." The class definition adopted by the trial court was identical to a definition that had been proposed by Cristler.

In a February 17, 2005 pleading, however, Cristler requested that the first exclusion to the class definition be amended to include the modifying language: "for the period of time that they had such employees or subcontractors." The proposed modification was intended to allow drivers who otherwise would qualify for inclusion in the class, but for the fact that they employed their own employees or subcontractors, to qualify for class membership for the period of time in which they did not employ any employees or subcontractors.

Cristler also sought to amend the third exclusion to the class definition so that drivers who occasionally delivered one or two packages for SCI clients other than Express Messenger would not be excluded from the class. The trial court rejected the proposed modifications to the class definition on the ground that they would render the class "unmanageable and continuously subject to change."

B.  *Reversal Is Not Warranted Even If the Class Definition Was Erroneous Because There Has Been No Showing of Prejudice*

The trial court's rulings regarding whether to certify a class and the necessity of modifying an existing class certification are reviewed on appeal for abuse of discretion. (*Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355, 361 [134 Cal.Rptr. 388, 556 P.2d 750].) Under the abuse of discretion standard, "a reviewing court should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) " 'The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Ibid.*) Similarly, under the California Constitution, "[n]o judgment shall be set aside, or new trial granted, in any cause . . . for any error as to any matter of procedure, unless . . . the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)

In the instant case, regardless of whether the trial court erred in defining the class, Cristler fails to carry its burden of establishing reversible error as there is no showing of prejudice from the trial court's assertedly erroneous rulings. A ruling that resulted in no discernible prejudice cannot, of course, be characterized as a miscarriage of justice. (See, e.g., *People v. Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243] [explaining that a miscarriage of justice will be found when it is "reasonably probable that a result more favorable to [the appealing party] would have been reached in the absence of the error"]; *Putensen v. Clay Adams, Inc.* (1970) 12 Cal.App.3d 1062, 1082 [91 Cal.Rptr. 319].)

■ As Express Messenger argues in its brief, the narrowed class definition that resulted from the rulings that Cristler now challenges on appeal did not harm Cristler, but instead *strengthened* Cristler's ability to demonstrate that the drivers who remained in the class were employees. In light of the trial court's refusal to expand the class definition, the drivers who remained in the class—those without any employees of their own and who did not deliver even an occasional package for clients other than Express Messenger— were the most likely to be characterized as Express Messenger's employees rather than as independent contractors. Nevertheless, the jury (and trial court) found that even the members of this core group of drivers were independent contractors. Had the class been expanded, as Cristler now urges, to include drivers less likely to be considered employees, the verdict would have been the same. The only difference in the outcome of the proceedings would be that a larger group of drivers would have had their contentions considered, *and rejected*, by the triers of fact. We see no basis on which to construe this consequence as in any way prejudicial to Cristler or otherwise constituting a miscarriage of justice.

As indicated above, Express Messenger includes a lengthy discussion of the absence of prejudice under a separate heading in its appellate brief. Cristler provides no response to this discussion in its reply brief. Cristler's only discussion of prejudice anywhere in its briefing is buried in a footnote in its reply brief where Cristler highlights Express Messenger's assertion that if anyone was prejudiced by the narrow class definition, it was Express Messenger. Cristler then asserts reversal is warranted because "prejudice [was] apparently suffered by all parties." (See *People v. Williams* (1997) 16 Cal.4th 153, 215 [66 Cal.Rptr.2d 123, 940 P.2d 710] [contentions " 'perfunctorily asserted without argument in support' " are not properly before appellate court].)[3]

---

[3] In other parts of the argument, Cristler appears to be arguing only that the class definition must be expanded on retrial *if* "th[is] Court also finds that reversal is warranted on Drivers' substantive arguments."

Given the adverse findings by the jury and the trial court with respect to the class members remaining in the class, there is no indication in the record (and Cristler points to none) that would suggest that Cristler was prejudiced by the more narrow class definition that resulted from the trial court's rulings. Cristler, therefore, fails to carry its burden of demonstrating that the trial court's error, if any, in its rulings with respect to the class definition was sufficiently prejudicial to warrant reversal.

## III.

### *The Trial Court's Instructions Were Not Erroneous*

Cristler contends that the trial court erred in instructing the jury with respect to the burden of proof and with respect to the factors the jury should consider in distinguishing employees from independent contractors. We address each of these instructional challenges below after setting forth the applicable standard of review.

### A. *Standard of Review*

The trial court's "duty to instruct the jury is discharged if its instructions embrace all points of law necessary to a decision." (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 553 [66 Cal.Rptr.3d 175] (*Thompson Pacific*).) "A party is not entitled to have the jury instructed in any particular fashion or phraseology, and may not complain if the court correctly gives the substance of the applicable law." (*Ibid.*)

When a party challenges a particular jury instruction as being incorrect or incomplete, "we evaluate the instructions given as a whole, not in isolation." (*People v. Rundle* (2008) 43 Cal.4th 76, 149 [74 Cal.Rptr.3d 454, 180 P.3d 224] (*Rundle*).) " 'For ambiguous instructions, the test is whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction.' " (*Ibid.*) The propriety of jury instructions is a question of law that we review de novo. (See *People v. Cole* (2004) 33 Cal.4th 1158, 1206 [17 Cal.Rptr.3d 532, 95 P.3d 811].)

### B. *Burden of Proof Instruction*

Cristler contends that the trial court erroneously instructed the jury on the burden of proof as to whether the class members were properly classified as employees or independent contractors. We disagree.

As pertinent to this challenge, the trial court instructed the jury as follows:

"The issue for you to decide is whether or not the Plaintiffs are employees or independent contractors.

"The Plaintiffs allege that they . . . were Defendant's employees.

"The Defendant . . . claims that the Plaintiffs were independent contractors, and were not employees.

"Plaintiffs have the obligation to prove that they were Defendant's employees. The Defendant has the obligation to prove that the Plaintiffs were independent contractors."

Cristler contends that these instructions were erroneous because they obscured the fact that California law required Express Messenger to bear the burden of establishing that persons in its service were independent contractors. For this contention, Cristler relies on section 3357, which states: "Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee." Cristler contends that the trial court's instruction, as quoted above, "wrongfully deprived [them] of th[is] evidentiary presumption." (See *Lujan v. Minagar* (2004) 124 Cal.App.4th 1040, 1048 [21 Cal.Rptr.3d 861] ["There is a rebuttable presumption that one who furnishes services for an employer is an employee. (§ 3357.)"].)

We find no error in the instructions. In evaluating jury instructions, we consider the jury instructions "as a whole." (*Rundle, supra,* 43 Cal.4th at p. 149.) Here, the entirety of the instructions included not only the statements quoted above, but also the following discussion of employees and independent contractors: "Any person rendering service for another, other than as an independent contractor, is presumed to be an employee.

" 'Employer' means any person who directly or indirectly employs or exercises control over the wages, hours, or working conditions of any person.

" 'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed.

" 'Independent Contractor' means any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished."

Considering the above quoted instruction alongside the instruction challenged by Cristler demonstrates that there was no error.

The trial court's instruction that Cristler had "the obligation to prove that [the class members] were [Express Messenger's] employees" did not improperly shift the burden of proof on the question of independent contractor status to Cristler. The instruction, in context, simply required Cristler to trigger the rebuttable presumption in section 3357 by coming forward with some foundational evidence that linked the class members and the services they provided to Express Messenger (e.g., that the class members delivered packages on behalf of Express Messenger as opposed to, say, Federal Express). The court's instructions included a definition of "employee" that encompassed any person who, by agreement, provided a "service" to an employer, and an instruction that any such person—who is not an independent contractor—is presumed to be an employee.

Given these instructions, the ultimate legal question presented to the jury was not whether Cristler could show that the class members were employees. Rather it was whether the class members, while otherwise indisputably employees, were exempted from the broad definition of "employee" by virtue of being independent contractors. On this question, the trial court's instruction unambiguously placed the burden on Express Messenger, stating: "The Defendant has the obligation to prove that the Plaintiffs were independent contractors." Thus, the instructions in their entirety were sufficiently clear in establishing that Express Messenger bore the burden of establishing Cristler's independent contractor status, and that the class members—if otherwise falling within the expansive definition of "employee"—did not have the burden of *disproving* such status. (*Rundle, supra*, 43 Cal.4th at p. 149 [ambiguous jury instructions do not warrant reversal unless " 'there is a reasonable likelihood that the jury misunderstood and misapplied the instruction' "].)

In addition, the instructions noted above included a verbatim restatement of section 3357 itself. Thus, to the extent Cristler was entitled to have the jury informed of the "evidentiary presumption" contained in section 3357, the trial court's recitation of that section verbatim satisfied that entitlement. While section 3357 may be "somewhat tautological" (*Yellow Cab Cooperative, Inc. v. Workers' Comp. Appeals Bd.* (1991) 226 Cal.App.3d 1288, 1294 [277 Cal.Rptr. 434]), Cristler can hardly complain that the trial court's instructions failed to communicate the substance of section 3357 when the court provided the jury with the precise language of that section. (See *Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1131 [72 Cal.Rptr.3d 382, 176 P.3d 654] [" ' "Instructions in the language of an applicable *statute* are properly given." ' "].)

## C. *The Instruction on the Relevant Substantive Considerations*

Cristler also contends that the trial court erred in instructing the jury as to the factors to consider in resolving whether the class members were independent contractors.

With respect to this challenge, the trial court instructed the jury as follows: "In determining whether the Plaintiffs and other class members ('drivers') were employees or independent contractors, you must consider a number of factors. You will need to weigh all of these factors based on the evidence that you have heard.

"1. The most important factor to consider is the extent to which the Defendant has the right to control the details of the work performed. The following additional factors are to be considered:

"2. The right to discharge at will without cause;

"3. Whether the drivers are engaged in a distinct occupation or business;

"4. The skill required in this occupation;

"5. Whether the driver or California Overnight pays for vehicles, equipment, and business expenses;

"6. The length of time for which the services are to be performed;

"7. The method of payment to drivers, whether by the hour or by the job;

"8. Whether or not the work done by drivers is part of the regular business of California Overnight;

"9. Whether or not the parties believe they are creating an employer-employee relationship;

"10. The driver's opportunity for entrepreneurial profit or loss depending upon his/her managerial skill;

"11. The drivers' use of helpers/replacements; and

"12. The degree of permanence of the working relationship.

"These individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often upon particular combina-

tions." Cristler contends that the instruction quoted above is erroneous because it is inconsistent with our Supreme Court's opinion in *Borello, supra,* 48 Cal.3d 341.[4] We disagree.

The trial court's instruction is drawn from the well-established body of case law summarized at the outset of this opinion that includes *Borello* itself. Thus, it is incorrect to suggest that the trial court's instruction is inconsistent either with California law generally or *Borello* in particular. The challenged jury instruction simply lists, in a neutral fashion, the pertinent factors identified in the case law prior to *Borello,* in *Borello* itself, and in the case law that followed *Borello.* (See *Estrada, supra,* 154 Cal.App.4th at p. 10; *Air Couriers, supra,* 150 Cal.App.4th at pp. 935–936.) In so doing, the instruction provided the jury with a correct statement of the substance of the applicable law. Consequently, there is no basis to conclude that the trial court erred in providing the instruction to the jury. (*Thompson Pacific, supra,* 155 Cal.App.4th at p. 553 ["A party is not entitled to have the jury instructed in any particular fashion or phraseology, and may not complain if the court correctly gives the substance of the applicable law."].)

Cristler highlights the fact that the trial court's instruction emphasized the importance of the right of an employer to control the details of the work, without explaining that, in *Borello,* the Supreme Court concluded that the control of the details factor was not necessarily dispositive in every circumstance. (See *Borello, supra,* 48 Cal.3d at p. 350.) The *Borello* opinion itself recognized, however, that (while not dispositive in the case of the cucumber harvesters), "the right [of the employer] to control work details is the 'most important' or 'most significant' consideration," and emphasized only that the factor should not be "applied rigidly and in isolation" and "the authorities

---

[4] Cristler proposed three separate alternative instructions, each of which was rejected by the trial court. The first proposed instruction (covering two and a half single-spaced pages of text) listed 13 factors that largely tracked the eventual instruction but included extensive commentary on each factor. The second instruction listed 14 factors with more abbreviated commentary. The final instruction was the most streamlined of the three, and included the following discussion of the first factor:

"1. The most important factor to consider is the extent to which the defendant has the right to control the details of the work performed by the Plaintiffs. If the defendant has widespread control over the operation as a whole, it is not necessary for the defendant to control every aspect of the drivers' work. The simplicity of the work, the payment system, and the nature of the work may make it unnecessary for an employer to maintain direct control over work details and the employer may maintain all necessary control by indirect means."

The court rejected the instructions, noting that a concise listing of the applicable factors was the most appropriate guidance for the jury, particularly as *Borello* dictated flexible application and blending of the factors. The court stated that to the extent counsel wanted to call the jury's attention to the manner in which each factor applied to the facts of the case, they could do so in argument.

also endorse several 'secondary' indicia of the nature of a service relationship." (*Borello*, at p. 350.) As noted above, the trial court here did not list only the control of the details factor, or suggest that it should be applied "rigidly and in isolation," but included the numerous " 'secondary' indicia" recognized in *Borello* in its instruction (*ibid.*), and emphasized that the jury should weigh all the factors, and "[t]hese individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often upon particular combinations."

Cristler also emphasizes other language in *Borello* that discussed the application of certain considerations to the facts of that case, and was not included in the trial court's instruction (e.g., "pervasive" control of the operations, the integration of the worker's service into the core business of the employer, and the relative strength of the discharge-for-cause factor). This nuanced critique of the trial court's instruction does not demonstrate error.[5]

As we have noted, the trial court was required to provide the jury with the "substance of the applicable law," not an exhaustive summary of the various ways in which that case law had been applied in other cases. (*Thompson Pacific, supra*, 155 Cal.App.4th at p. 553.) Here, the trial court performed its duty by providing the jury with a list of 12 pertinent factors drawn from the controlling case law, and highlighting, as the case law does, the control factor as the "most important" factor. While certain cases (such as *Borello*) emphasize other of the factors in various ways—in evaluating whether substantial evidence supports a finding of the trier of fact—those cases do not purport to redefine the factors themselves. Nor does *Borello*, as Cristler's counsel suggested at oral argument, purport to separate out a class of cases for which instructional amplification of the first *Borello* factor is mandated. *Borello* specifically stressed that "[w]e adopt no detailed new standards for examination of the issue . . ." and contains no suggestion that different legal standards apply in the context of different occupations. Rather, the court stated, "Each *service arrangement* must be evaluated *on its facts*, and the dispositive circumstances may vary from case to case." (*Borello, supra*, 48 Cal.3d at p. 354, italics added.)

In sum, the trial court, after listing the pertinent factors, was permitted to allow *the jury* to apply the factors as it saw fit and was not required to frame the jury's deliberations in precisely the fashion preferred by Cristler.

---

[5] *Borello*, like all of the cases cited by Cristler, did not discuss the proper instructions to be presented to a jury. Rather the case discussed, in the context of the deferential review of a classification made by the Division of Labor Standards Enforcement, the application of the familiar factors (provided to the jury here) to the circumstances of a particular case.

## IV.

### *The Trial Court Did Not Err in Its Ruling on the Unfair and Unlawful Business Practices Claims*

Echoing its contentions regarding the allegedly erroneous instructions discussed in the preceding section, Cristler contends that the trial court also erred when it resolved Cristler's unfair and unlawful business practices claims in favor of Express Messenger.

Specifically, Cristler argues that the trial court erred because it applied the same erroneous legal principles in resolving Cristler's equitable claims as it provided to the jury. Cristler summarizes: when "this Court finds that the trial court erroneously interpreted and applied *Borello* in the instructions it gave to the jury, it should similarly find that the trial court's own misinterpretation and misapplication of *Borello* in its subsequent Statement of Decision also requires reversal."

As discussed in part III., *ante*, the trial court's instructions to the jury were not erroneous and consequently, even if we assumed that the trial court applied these same legal principles in resolving Cristler's nonjury claims (all of which were predicated on the same core claim), there would be no cause for reversal.

## V.

### *Cristler Fails to Carry Its Burden of Demonstrating Any Evidentiary Error*

Cristler contends that the trial court abused its discretion in allowing testimony regarding the ability of the class members generally, and so-called " 'Master Contractors' " (who were not included in the class) in particular, to earn increased profit as independent contractors. We conclude that Cristler has failed to carry its burden of demonstrating reversible error.

Prior to trial, Cristler submitted an in limine motion seeking to exclude "evidence about the amount employee drivers were compensated." After a lengthy discussion in a pretrial hearing of the relevance of evidence of the drivers' earnings, the trial court denied the motion.

Focusing our review at the outset on the in limine ruling, we perceive no abuse of discretion. The motion sought to completely preclude inquiry into a broad subject matter that was virtually identical to one of the classification factors recognized in the case law and submitted to the jury: "[t]he driver's

opportunity for entrepreneurial profit or loss depending upon his/her managerial skill." (See *Borello, supra*, 48 Cal.3d at p. 355 [recognizing this factor as "logically pertinent to the inherently difficult determination whether a provider of service is an employee or an excluded independent contractor"].) Consequently, the trial court acted well within its discretion in denying the in limine motion.

Of course, the possibility remains that specific testimony offered by Express Messenger at trial on this topic was irrelevant (Evid. Code, § 350) or unduly prejudicial or misleading (*id.*, § 352) and should have been excluded. Indeed, Cristler asserts that at trial, the trial court "time and again" "allowed a steady drum beat of testimony . . . about the financial advantages and 'freedoms' Drivers enjoyed as 'independent contractors.' " Cristler, however, fails to identify in its appellate brief any *specific* objectionable testimony that was presented during the trial and provides no record citations to assist the court in locating any such testimony in the 23-volume transcript of trial proceedings. This is fatal to his claim. (See *Air Couriers, supra*, 150 Cal.App.4th at p. 928 ["party on appeal has the duty to support the arguments in the briefs by appropriate reference to the record, which includes providing exact page citations," and "[w]e have no duty to search the record for evidence and may disregard any factual contention not supported by proper citations to the record"]; *People v. DeSantis* (1992) 2 Cal.4th 1198, 1227–1228 [9 Cal.Rptr.2d 628, 831 P.2d 1210] [reviewing court "not required to scrutinize the . . . record" to find support for counsel's assertions]; *People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481] [it is not the role of reviewing court to independently seek out support for appellant's conclusory assertions, and such contentions may be rejected without consideration]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 [87 Cal.Rptr.2d 754] ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties."]; Cal. Rules of Court, rule 8.204(a)(1)(C) ["any reference to a matter in the record" must be supported "by a citation to the volume and page number of the record where the matter appears"].) The sole specific evidence on increased earnings that Cristler references, and provides a record citation for, is the testimony of a defense expert ("Robert Wallace[,] a CPA economist") who intended to testify that the drivers generally made more money as independent contractors. As Cristler acknowledges, that testimony was *excluded* in its entirety by the trial court and thus cannot support any claim of error on appeal.

The burden of establishing trial court error and particularly an abuse of discretion falls squarely on the appellant. (See *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766 [115 Cal.Rptr.2d 705] ["It is the appellant's burden to demonstrate the existence of reversible error."].) If the appellant fails, as here, even to identify the specific testimony that was allegedly erroneously admitted, much less craft an argument intended to show why *that*

testimony was both objectionable and sufficiently prejudicial to warrant reversal, the challenge must fail.[6] Thus, to the extent Cristler has a valid claim that specific evidence was improperly admitted, that claim is forfeited by Cristler's failure to properly present it on appeal.

VI.

*The Record Does Not Support Cristler's Contention That the Trial Court Improperly Awarded Costs*

Finally, Cristler contends that the trial court erred in its award of costs to Express Messenger under Code of Civil Procedure section 1032.

■ After prevailing at trial, Express Messenger filed a motion for costs pursuant to Code of Civil Procedure sections 1032 and 1033.5. Those sections allow a trial court to award costs to a prevailing party for, among other things, "[m]odels and blowups of exhibits and photocopies of exhibits" if "they were reasonably helpful to aid the trier of fact." (Code Civ. Proc., § 1033.5, subd. (a)(12); see § 1032, subd. (b).) The motion included a request for $15,338.03 for "Models, blowups, and photocopies of exhibits," characterized in a subsequent entry as "Trial Exhibits and Blowups."

Cristler filed a motion objecting to various costs claimed by Express Messenger, including the request for exhibit costs. In the motion, Cristler contended that Express Messenger "makes no showing that this amount represents solely the costs for those exhibits and blowups actually used at trial." The trial court denied the motion.

On appeal, Cristler renews this contention, asserting that Express Messenger's request "included costs for exhibits and blow-ups, whether used at trial or not." Express Messenger responds in its appellate brief that it "only sought costs for those exhibits actually used at trial."[7]

---

[6] Indeed, it is not even clear that Cristler is entitled to review of the in limine ruling discussed above. "*In limine* rulings are not binding" (*People v. Mattson* (1990) 50 Cal.3d 826, 850 [268 Cal.Rptr. 802, 789 P.2d 983]) and are "subject to reconsideration upon full information at trial." (*People v. Turner* (1990) 50 Cal.3d 668, 708 [268 Cal.Rptr. 706, 789 P.2d 887]; *People v. Jennings* (1988) 46 Cal.3d 963, 975, fn. 3 [251 Cal.Rptr. 278, 760 P.2d 475] [party should renew in limine motion during trial because "until the evidence is actually offered, and the court is aware of its relevance in context, . . . the court cannot intelligently rule on admissibility"]; *People v. Yarbrough* (1991) 227 Cal.App.3d 1650, 1655 [278 Cal.Rptr. 703] ["*in limine* rulings are not binding because the trial court has the power to reconsider, modify or set aside its order at any time prior to the submission of the cause"].)

[7] There is a dispute in the courts of appeal as to whether the costs for trial exhibits that were not used at trial are recoverable. (See *Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550, 1559 [47 Cal.Rptr.3d 206] [recognizing disagreement].) There is nothing in the record,

Cristler's argument highlights what is, in essence, a factual dispute as to whether Express Messenger's costs request encompassed exhibits that were *not* used at trial. This same factual dispute was presented to the trial court and we are in no position to second-guess the trial court's apparent resolution of the matter.

The appellate record provided to us by the parties is relatively sparse with respect to the costs issue. It includes the parties' respective pleadings—in which the debate was framed as to whether Express Messenger actually used the exhibits at trial—and a minute order stating: "11. Models, blowups, and photocopies of exhibits, the Court denies the motion to tax and the amount of $15,338.03 is allowed." The order notes that the trial court heard oral argument on the costs dispute, but the transcript of the argument is not included in the appellate record.

Given this state of the record, we must presume in favor of the judgment that the trial court made an implicit finding that the exhibits were, as Express Messenger contends, used at trial. (*Hochstein v. Romero* (1990) 219 Cal.App.3d 447, 451, fn. 4 [268 Cal.Rptr. 202] [recognizing that "it is a familiar principle of appellate review that the judgment of the lower court is presumed correct, and all intendments and presumptions are indulged to support the judgment on matters as to which the record is silent"].) Substantial evidence exists to support such a finding as there are declarations in the record that could support a trial court's conclusion that the $15,338.03 figure represented the costs for exhibits and blowups actually used at trial, and thus indisputably allowable as costs. (*Brasher's Cascade Auto Auction v. Valley Auto Sales & Leasing* (2004) 119 Cal.App.4th 1038, 1048 [15 Cal.Rptr.3d 70] ["a trial court's explicit and implicit findings of fact in its statement of decision are reviewed under the substantial evidence standard"].) Further, "having presided over the trial, the trial court had all the evidence needed" to make such a determination. (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 133 [84 Cal.Rptr.2d 753] [affirming trial court's ruling regarding request for costs for trial exhibits].) Consequently, we have no authority to countermand the trial court's implicit factual finding regarding Express Messenger's use of the exhibits at trial and reject Cristler's contention as to costs.

---

however, to suggest that Express Messenger argued in the trial court that it was entitled to the costs of exhibits *not* used at trial, and no suggestion that the trial court ruled in Express Messenger's favor on this basis.

## DISPOSITION

Affirmed.

Nares, Acting P. J., and Aaron, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 20, 2009, S171439. George, C. J., did not participate therein.