Filed 1/21/21  Keebler v. Keebler CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| EDWARD H. KEEBLER, SR., Individually and as Trustee, etc. et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> EDWARD KEEBLER, JR., <br><br> Defendant and Appellant. | D075905 <br><br><br> (Super. Ct. No. 37-2017-00010382-CU-FR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E.L. Strauss, Judge.  Affirmed.

Edward Keebler, Jr., in pro. per., for Defendant and Appellant.

Michael B. Taggart for Plaintiffs and Respondents.

A jury found that Edward Keebler, Jr. (Son) engaged in elder abuse and fraud against his 84-year-old father, Edward Keebler, Sr. (Father), by persuading Father to enter into a long-term residential lease with Son on terms an expert witness characterized as a "con job" and "extremely unfair and one-sided."  The jury awarded Father $71,800 in damages, and the court

awarded him approximately $60,000 in attorney fees and costs. The trial court also followed the jury's advisory verdict and rescinded the lease.

Representing himself on appeal (as he did at trial), Son challenges a variety of the trial court's rulings on pleading, evidentiary, and discovery matters. He also accuses the trial court of exhibiting bias against him.

As we will explain, Son has not met his burden as the appellant to show—through coherent argument, supported by citations to an adequate appellate record and pertinent legal authority—that the trial court committed reversible error. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### Background

Father lived in a house in Lakeside that he owned through a trust. In about 2010, Father (then about 79) let Son (then in his 60's) move in with him rent-free so Son could pursue his "lifetime ambition" of writing a book. According to Father, they "got along great" for the first five years, "[b]ut then after that, [Son] went bananas" when Father asked him to move out.

Father asked Son to move out in 2015 after Father suffered several hospitalizations. After the most recent one, Father moved in temporarily with his other son, Dennis, and Dennis's wife, Debbie. It was during this period, when Debbie was helping Father with his bookkeeping, that Father first learned he had signed a lease with Son. Father surmised Son had "drugged [him] up" after one of the hospitalizations and presented the lease for signature when Father did not have his eyeglasses and could not read what he was signing.

Although the lease itself is not in the appellate record, Father's expert witness testified at trial about its terms. There were two earlier versions of the lease, but the expert focused on the final version, which was recorded

2

with the county recorder.  The lease had a 10-year term, with an automatic 10-year extension.  The expert opined that although fair market rental value for a comparable residence would be about $1,200 to $1,500 per month, the lease provided for monthly rent of only $200, with no cost-of-living increases during its potential 20-year term.  Further, upon Father's death or attempt to encumber the property, the rent would decrease to $20 per month.  The lease also required Father to pay more than $300 in monthly utilities, so "[e]ssentially, the landlord . . . is paying the tenant to stay there."  The expert opined the lease was "extremely unfair and one-sided," and was "essentially a con job" by a person "attempt[ing] . . . to take gross advantage of . . . their parent."

## Litigation[1]

In March 2017, Father (individually and on behalf of his trust), Dennis, and Debbie sued Son.  Father asserted causes of action for financial elder abuse, fraud, intentional misrepresentation, false promise, concealment, and rescission of the lease.  Dennis and Debbie asserted causes of action for negligent infliction of emotional distress.  Neither Dennis nor Debbie prevailed, and their claims are not at issue in this appeal.

Son filed a cross-complaint against Father, Dennis, and Debbie asserting causes of action for negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of the implied covenant of good faith and fair dealing, malicious prosecution, abuse of process, and trespass.  The cross-defendants filed a demurrer, which the trial court overruled with respect to the trespass claim, sustained without leave to

---

[1]    Although the pertinent pleadings are not in the appellate record, we have determined from other portions of the record (e.g., verdict forms, minute orders, etc.) the nature and scope of the parties' claims.

3

amend as to the malicious prosecution claim, and sustained with leave to amend as to the remaining claims.  However, because Son never amended his cross-complaint, the only claim on which he proceeded to trial was for trespass, which he asserted against only Dennis and Debbie.

The pretrial proceedings were contentious.  Each side brought various discovery motions.  The parties had difficulty cooperating on pretrial matters.  And the case was stayed temporarily when Son filed for bankruptcy protection.

The record also shows that while this case was pending, some of the parties engaged in other related litigation.  For example, Father filed two unlawful detainer cases against Son, but ultimately dismissed them voluntarily and without prejudice.  And Son unsuccessfully sought a domestic violence restraining order against Dennis.  The pertinent pleadings in those case are referenced in the appellate record in this case, but the documents themselves are not in the record.

This case ultimately went to trial on April 8-10, 2019.  On the first day, Son, Father, and Dennis testified in Father's case-in-chief.  On the second day, Father's expert and Debbie testified in Father's case-in-chief; Father and Dennis testified in Son's trespass case-in-chief; and the trial court instructed the jury.  On the third day, the jury deliberated and returned verdicts.  The appellate record includes a reporter's transcript only for the second day of trial.[2]

---

[2]    The reporter's transcript indicates the jury instructions were not reported.  However, they are included in the clerk's transcript.

The jury found in Father's favor on his claims for financial elder abuse and fraud, awarding him damages of $62,400 and $9,400, respectively. The jury found against Son on his trespass claim.

The jury also returned an advisory verdict on Father's request for equitable relief, stating, "We are all in agreement that the lease is invalid." The trial court "agree[d] with the jury," expressly finding Son "was not a credible witness." Accordingly, the court rescinded the lease, issued a writ of possession ordering Son to vacate the property, and directed the parties to provide the county recorder any documents necessary to nullify the recorded lease.

The court also awarded Father $48,736.50 in attorney fees and $11,053.14 in costs. (See Welf. & Inst. Code, § 15657.5, subd. (a) ["Where it is proven . . . that a defendant is liable for financial abuse, . . . the court shall award to the plaintiff reasonable attorney's fees and costs."].)

## DISCUSSION

### I. Appellate Principles

"It is a fundamental rule of appellate review that a judgment is presumed correct and the appealing party must affirmatively show error." (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1484; see *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).)

To overcome the presumption of correctness, "the appellant must identify each order that he asserts is erroneous, cite to the particular portion of the record wherein that ruling is contained, and identify what particular legal authorities show error with respect to each challenged order." (*County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1443 (*Smith*); Cal. Rules of

Court, rule 8.204(a)(1)(B)[3] [appellant's brief must "support each point by argument"].) "One cannot simply say the [trial] court erred, and leave it up to the appellate court to figure out why." (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 (*Niko*); see *Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 523 (*Howard*) ["Conclusory assertions of error are ineffective in raising issues on appeal."].)

The appellant must address in its opening brief each claimed error, under a clearly identified heading. (Rule 8.204(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4 (*Opdyk*).) The appellant must also provide an appellate record sufficient to establish error as to each challenged order. (*Jameson, supra*, 5 Cal.5th at p. 609.) " '[I]f the record is inadequate for meaningful review, . . . the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 (*Gee*).)

An appeal is not a second trial. We do not reweigh evidence. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12.) We "resolve all factual conflicts and questions of credibility" in the prevailing party's favor. (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) And we will affirm the judgment if it is correct on any theory, regardless of the trial court's reasoning. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776-777.)

These appellate principles apply with equal force to self-represented appellants. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125-1126.)

---

[3] Undesignated rule references are to the California Rules of Court.

## II. Denial of Son's Request for Entry of Default

We quickly dispose of Son's contention that the trial court erred by denying his request to enter default when Father filed an allegedly untimely answer to Son's cross-complaint. Regardless of whether Father timely filed his answer, the record shows he did so before Son requested entry of default. This was sufficient to preclude entering Father's default. (See *Goddard v. Pollock* (1974) 37 Cal.App.3d 137, 141.)

## III. Exclusion of Son's Documents

Son contends the trial court abused its discretion by excluding on relevance grounds nearly all the documents necessary to defend against Father's case and to prosecute his own case for trespass. (See *Alexander v. Community Hospital of Long Beach* (2020) 46 Cal.App.5th 238, 258 (*Alexander*) ["We review a trial court's rulings on the admissibility of evidence for abuse of discretion."].) Son has not met his burden to show error.

Son's challenge fails at the outset because he has not identified in the argument section of his opening brief a single document he contends was erroneously excluded. (See rule 8.204(a)(1)(B); *Opdyk*, *supra*, 34 Cal.App.4th at p. 1830, fn. 4.) Instead, Son relies on a blanket assertion of error. This is insufficient to meet his burden on appeal. (See *Morgan v. Wet Seal, Inc.* (2012) 210 Cal.App.4th 1341, 1369 [rejecting challenge to "blanket ruling" on admissibility where the "appellants fail[ed] to identify any specific piece of . . . evidence that was either erroneously admitted or that caused them prejudice"]; *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 89-90 ["If the appellant fails . . . even to identify the specific testimony that was allegedly erroneously admitted, much less craft an

argument intended to show why *that* testimony was both objectionable and sufficiently prejudicial to warrant reversal, the challenge must fail."].)

And even if we attempted to discern from other portions of Son's briefing which documents he contends the trial court erroneously excluded, we would likewise conclude Son has not met his burden to show error.

For example, in his statement of facts, Son notes the trial court "disallowed as . . . irrelevant" the dedication page of the book he wrote, which "reflects tribute due to [Father] for his assistance." But Son has not explained how his book dedication is relevant to this case, or how its exclusion prejudiced him. (See rule 8.204(a)(1)(B); *Smith*, *supra*, 132 Cal.App.4th at p. 1443.) Moreover, it appears from the reporter's transcript that the trial court actually excluded the dedication on hearsay grounds (not relevance), which Son does not address in his briefing.

Son also asserts in his statement of facts that the trial court erred by excluding on relevance grounds Father's two unlawful detainer complaints against Son, which Son maintains "**were defeated**." But the record shows these cases were not, in fact, defeated. Rather, Father voluntarily dismissed them without prejudice. Moreover, the unlawful detainer complaints are not in the appellate record, so we are unable to evaluate their relevance to this case. (See *Jameson*, *supra*, 5 Cal.5th at p. 609; *Gee*, *supra*, 99 Cal.App.4th at p. 1416.)

Again in his statement of facts, Son states, "Another document, a complaint to the HHS for elder abuse was filed by the Keebler's [*sic*] but determined to be unfounded. This document was also considered irrelevant." This is the sum total of Son's discussion of this document, which is not in the appellate record. Without providing the document, coherent argument, or pertinent legal authority, Son has not met his burden to show prejudicial

8

error.  (See *Howard, supra*, 187 Cal.App.4th at p. 523; *Smith, supra*, 132 Cal.App.4th at p. 1443; *Niko, supra*, 144 Cal.App.4th at p. 368.)

## IV.  Motions in Limine

Son contends the trial court erred by granting Father's two motions in limine—one to exclude evidence of Father's counsels' state bar discipline records, and the other to exclude testimony from two witnesses pertaining to their relationship with Father and ownership of a vehicle.  As we will explain, the court did not abuse its discretion in granting either motion.  (See *Alexander, supra*, 46 Cal.App.5th at p. 258.)

### 1.  Attorney Discipline

Father moved in limine to exclude any evidence or argument pertaining to the state bar disciplinary records of either of Father's two trial attorneys. Father argued that because neither of the attorneys were "parties to the litigation nor are expected to testify at trial," any evidence regarding their history of professional discipline would "have no probative value or relevancy" to any of the claims in the litigation.

The appellate record includes neither a written opposition to this motion by Son, nor a reporter's transcript of the relevant hearing.  A minute order shows the trial court granted the motion.

The record substantiates Father's arguments to the trial court.  First, neither of Father's attorneys was a party to either the complaint or cross-complaint.  Second, neither attorney is listed on the parties' joint witness list. Based on this showing, the trial court did not abuse its discretion in excluding evidence regarding the attorneys' professional discipline records.

Son argues the past history of one of Father's attorneys "was relevant in that his criminal acts were consistent with his actions during trial and should have been exposed to the jury."  He argues such evidence was

9

admissible as prior bad acts under Evidence Code section 1101, subdivision (b). But Son has not shown that he ever made this argument to the trial court, as he must have to have preserved the issue for appeal. (See *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282 (*Shaw*) ["a proponent of evidence [who] does not assert a particular ground of admissibility below . . . is precluded from arguing on appeal that the evidence was admissible under a particular theory"]; *A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1289 (*A.G.*) [" ' "[A] party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct" [citation.]' "].) Nor has Son explained how his opposing counsel's discipline records relate to the parties' claims.

## 2. Witness Testimony

Father also moved in limine to preclude two potential witnesses, Constanze and Benno Rayhrer, from testifying about "their relationship with [Father] or the ownership" of a specific pickup truck. Father argued their testimony on these topics was irrelevant, and that the truck-ownership issue had already been resolved adversely to Son in a domestic violence restraining order proceeding involving Son and Dennis.[4]

The appellate record includes neither a written opposition to this motion by Son, nor a reporter's transcript of the relevant hearing. A minute order shows the trial court granted the motion.

---

[4] Father attached to his motion in limine an excerpt from the reporter's transcript of the restraining order hearing at which the court found Son had "not proven by the preponderance of the evidence that that vehicle, in fact, was his lawfully owned vehicle." The court also found Dennis was "much more credible than" Son.

Son has not established that the trial court abused its discretion in granting the motion. Although Son addresses the truck-ownership issue in his briefing (essentially claiming Father stole the truck from Son), he never explains how it is relevant to Father's claims against Son, or Son's trespass claims against Dennis and Debbie. (See *Smith, supra,* 132 Cal.App.4th at p. 1443; rule 8.204(a)(1)(B).) Thus, Son has not met his burden to show the trial court erred by excluding testimony on this subject on relevance grounds.[5]

Nor has Son explained how the trial court erred in excluding the Rayhrers' testimony about "their relationship with [Father]." Son argues these witnesses "would have been able to offer positive character references *for* [*Son*]." (Italics added.) But the court did not preclude these witnesses from testifying about their relationship *with Son*; it precluded them only from testifying about their relationship *with Father*.

Son also asserts Constanze Rayher "is a respected teaching surgeon" who "would have been able to offer a medical opinion on the drugging allegation which is at the core of [Father]'s complaint." But Son has not shown that he preserved this argument for appeal by first raising it in the trial court. (See *Shaw, supra,* 170 Cal.App.4th at p. 282; *A.G., supra,* 246 Cal.App.4th at p. 1289.) Nor did Son designate this witness as an expert— she is listed only as a percipient witness in both the joint trial readiness conference report and the joint trial witness list. (See Code Civ. Proc., § 2034.300 [authorizing exclusion of undisclosed expert witnesses].)

---

5    Based on this conclusion, we need not determine whether the trial court also properly excluded the testimony on res judicata grounds.

11

Son raises in his reply brief several additional topics he contends the Rayhrers could have testified about (e.g., the condition of Father's residence, Father's credibility).  But for " '[o]bvious reasons of fairness,' " issues " 'raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' "  (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)  Additionally, the record does not indicate whether Son ever raised these grounds in the trial court, as required.  (See *Shaw*, *supra*, 170 Cal.App.4th at p. 282; *A.G.*, *supra*, 246 Cal.App.4th at p. 1289.)

## V.  Discovery Issues

Son contends the trial court deprived him of the opportunity to conduct discovery by denying his motion to compel and imposing $1,500 in sanctions, and by "den[ying] a fee waiver for the purpose of deposing witnesses."  Son has not met his burden with respect to either claim.

Son has not met his burden with respect to the motion to compel because he has neither included the subject motion in the appellate record, nor explained how the trial court erred by denying the motion and imposing sanctions.  (See *Jameson*, *supra*, 5 Cal.5th at p. 609; *Niko*, *supra*, 144 Cal.App.4th at p. 368.)

In our independent review of the appellate record, we found only one ruling regarding a motion to compel filed by Son.  In it, the trial court denied Son's motion and ordered him to pay $1,500 in sanctions because he failed to support his motion with "a separate statement in compliance with . . . rule 3.1345(a)."[6]  These rulings were "well within the trial court's discretion."

---

[6]    This rule requires the moving party on most discovery motions to support the motion with a separate statement "that provides all the information necessary to understand each discovery request and all the responses to it that are at issue.  The separate statement must be full and

12

(*Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 893 [when a party fails to provide the required separate statement, the trial court is "well within its discretion to deny the motion to compel discovery on that basis"]; see *St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 778; Code Civ. Proc., § 2031.300, subd. (c) [requiring the losing party on a motion to compel to pay sanctions unless the court finds that party "acted with substantial justification or that other circumstances make the imposition of the sanction unjust"].)

As for the fee-waiver issue, we are unable to determine the nature of Son's claim. He has failed to support the claim with citations to any evidence in the appellate record—including to his request or the trial court's allegedly erroneous order—any authority, or any legal argument. Thus, he has not met his burden of showing prejudicial error. (See *Jameson, supra*, 5 Cal.5th at p. 609; *Howard, supra*, 187 Cal.App.4th at p. 523; *Niko, supra*, 144 Cal.App.4th at p. 368; *Smith, supra*, 132 Cal.App.4th at p. 1443; rule 8.204(a)(1)(B).)

## VI. Judicial Bias

Son contends the trial court exhibited "undue bias and favor toward plaintiffs" (capitalization omitted) by (1) giving biased jury instructions, (2) allowing Father's counsel to " 'reorganize[]' " the joint trial notebook so that Son's exhibits were " 'out of sorts' "; (3) apologizing to plaintiffs for a delay in proceedings; and (4) interposing objections while Son was cross-examining witnesses and giving his closing argument. We conclude Son forfeited these claims by failing to raise them in the trial court. And even if he had not forfeited them, we would conclude Son has not met his burden to show bias.

complete so that no person is required to review any other document . . . ." (Rule 3.1345(c).)

13

"As a general rule, judicial misconduct claims are not preserved for appellate review if no objections were made on those grounds at trial." (*People v. Sturm* (2006) 37 Cal.4th 1218, 1237; see *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218 [defendants "did not preserve their claim of judicial bias for review because they did not object to the alleged improprieties and never asked the judge to correct remarks made or recuse himself"]; *Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1337-1339.) "However, a [party]'s failure to object does not preclude review 'when an objection and an admonition could not cure the prejudice caused by' such misconduct, or when objecting would be futile." (*Sturm*, at p. 1237.)

Son has not preserved his claims of judicial bias for appellate review because the record does not show that he ever objected on such grounds in the trial court. Nor has Son argued or established that doing so would have been futile. Thus, Son has not preserved these claims for appellate review.

But even if he had preserved these claims, we would conclude Son has not met his burden to show bias.

Son's claim regarding biased jury instructions would fail because Son has not identified a single instruction he contends was biased. Indeed, it is unlikely he could do so inasmuch as the only instructions in the appellate record are CACI pattern instructions approved by the Judicial Council of California.[7]

---

[7] To the extent Son claims the instructions were *erroneous*, as opposed to *biased*, the claim would fail because Son has not supported it with a reporter's transcript or an agreed or settled statement of the challenged instructions, as required. (See *Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532 [claim of instructional error rejected where "the

Son's claim that Father's counsel improperly reorganized the trial notebook would fail for at least two reasons. First, Son has not cited any evidence in the appellate record indicating it actually occurred. (See *Smith*, *supra*, 132 Cal.App.4th at p. 1443.) To the contrary, Son's only citation to the record in support of this claim is to an instance during trial where Son referred to an exhibit by the wrong number.[8] Second, even if it occurred, Son has not explained how opposing counsel's reorganization of the joint trial notebook would constitute *judicial* bias.

Son's claim that the court exhibited bias by apologizing to the plaintiffs for a delay in proceedings would fail because no such incident appears in the appellate record. (See *Jameson*, *supra*, 5 Cal.5th at p. 609.) And, even if it did occur, Son has not explained how a single apology for a delay in proceedings would constitute judicial bias. (See *Howard*, *supra*, 187 Cal.App.4th at p. 523; *Niko*, *supra*, 144 Cal.App.4th at p. 368; *Smith*, *supra*, 132 Cal.App.4th at p. 1443; rule 8.204(a)(1)(B).)

Finally, Son's claim that the court exhibited bias by objecting during his examination of witnesses and closing argument would fail because Son has neither provided an appellate record showing it ever occurred (see *Jameson*, *supra*, 5 Cal.5th at p. 609), nor explained how it would constitute judicial bias if it had occurred (*Smith*, *supra*, 132 Cal.App.4th at p. 1443; rule 8.204(a)(1)(B); see also *People v. White* (1954) 43 Cal.2d 740, 747 [trial courts

---

reporter's transcript fails to reflect the content of the challenged special instructions"]; rule 8.120(b).)

[8] Specifically, Son referred during trial to a rent-payment receipt as *Exhibit 3*, when the receipt was listed as *Exhibit 5* in the parties' joint trial readiness conference report (filed three months before trial) and the joint trial exhibit list.

may object to improper questions]; *Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (2018) 19 Cal.App.5th 525, 541 [" ' "[A] trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review" ' " on appeal].)

**DISPOSITION**

The judgment is affirmed.  Appellant to pay Respondents' costs on appeal.

HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.


16