[No. B042253. Second Dist., Div. Four. Apr. 25, 1990.]

ROBERT J. CRUPI, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

COUNSEL

Stone & Healy, Stone, Thistle & Hernandez, Mary Ann Healy and Enrique
A. Hernandez for Plaintiff and Appellant.

James K. Hahn, City Attorney, Frederick N. Merkin, Assistant City
Attorney, and Arthur B. Walsh, Deputy City Attorney, for Defendants and
Appellants.

## OPINION

**TODD, J.**\*—Plaintiff Robert J. Crupi appeals from that portion of the trial court's order denying his motion to preliminarily enjoin defendants City of Los Angeles, Daryl F. Gates, and Harry T. Kozak (hereafter department) from using certain information against him in a pending disciplinary proceedings involving his employment as a Los Angeles police officer and to mandate that he be restored to his regular assignment. Defendant City of Los Angeles cross-appeals from the order granting backpay to plaintiff.

## BACKGROUND

Plaintiff, while acting in his capacity as an officer of the Los Angeles Police Department, shot and wounded a fleeing felon on July 2, 1988. In accordance with department procedures the matter was referred to both the department's use of force review board[1] and officer-involved shooting section of the robbery/homicide division for investigation.[2] In the meantime, plaintiff was evaluated by the department psychologist and after attending a two-week tactical awareness course returned to full duty on July 29, 1988.

On October 31, 1988, the use of force review board made a finding classifying the shooting as "out of policy" and recommended administrative disapproval. Plaintiff was advised of these results on November 2, 1988, by his commanding officer, defendant Harry T. Kozak. He was also advised

---

\* Assigned by the Chairperson of the Judicial Council.

[1] Section 092.50 of the manual of the Los Angeles Police Department requires that the use of force review board investigate any incident involving the discharge of a firearm by sworn personnel. The use of force review board is not designated as a disciplinary body and does not set any specific penalty or recommend any penalty. Instead, it makes findings as to the propriety of the officer's acts and recommends either no action, training or administrative disapproval.

[2] In accordance with section 795.30 of the Los Angeles Police Department Manual, the officer-involved shooting section, robbery/homicide division is responsible for the investigation of any shooting incident involving sworn personnel which results in a hit. It is the responsibility of this section to prepare and submit a report on the incident marked and regarded as confidential within 60 days of the incident. This report is to be distributed by the commanding officer of this division to the chair of the use of force review board. The officer in charge of this division must notify the chief of police and the commanding officer of the internal affairs division if the evidence indicates that the officer is involved in serious misconduct.

Section 795.40 of the Los Angeles Police Department Manual provides that the internal affairs division assumes responsibility for the investigation of the incident if it is determined that an officer is involved in serious misconduct. Section 796.15 of the manual provides that the commanding officer of the internal affairs division has the responsibility to prepare formal charges and forward them to the subject employee's commanding officer who, in turn, notifies the employee and executes the discipline. Upon completion of the disciplinary action, the use of force internal process report and related reports are returned to the chairman of the use of force review board for filing. The reports are then forwarded to the commanding officer of personnel division for filing in the concerned officer's personnel package.

that pending review of the shooting he would be taken out of the field and assigned to work in the station. In addition, pending review he was not permitted to work in the field on an overtime basis or drive a city-owned vehicle to and from work.

On November 10, 1988, the chief of police, defendant Daryl F. Gates, adopted the use of force review board report and submitted his findings to the police commission. These findings and a copy of the report were formally transmitted to plaintiff's commanding officer on November 23, 1988, with a request that he recommend the appropriate administrative response. The commanding officers requested a psychological work fitness evaluation to be completed by the Interdepartmental Personnel and Training Bureau. Included with this request was a compilation of records describing 12 shootings in which plaintiff was involved during his 14-year career. Three of these shootings had been adjudicated as "out of policy."

In the meantime, on November 14, 1988, plaintiff had filed a grievance with respect to the use of force review board hearing, complaining that he had not received notice of the hearing as he had requested and that his station assignment was punitive. The grievance was found to be without merit and a finding was made that pending completion of the psychological examination, it was in the best interest of the public, the department and plaintiff that plaintiff be in an assignment where he could not be involved in another shooting.

On January 6, 1989, plaintiff was notified that the proposed disposition of the incident was for the charges to be sustained and the matter adjudicated by a board of rights. Plaintiff was provided copies of the use of force internal process report, the use of force review board report, the formal findings of Chief Gates to the board of police commissioners and the investigative report prepared by the robbery/homicide division, officer-involved shooting section.

On February 14, 1989, the department was notified that the psychological evaluation of plaintiff had been completed and he had been found capable of performing full duty.

On February 16, 1989, plaintiff was suspended from duty without pay pending a hearing before the board of rights scheduled for February 28, 1989. The hearing was continued to March 28, 1989, at plaintiff's request.

On February 23, 1989, plaintiff filed this action seeking injunctive and declaratory relief and a writ of mandate against defendants. Plaintiff filed a motion for preliminary injunction and/or other extraordinary relief on

March 24, 1989, seeking an order that he be restored to full duty as a motor officer and for payment of all salary and benefits lost as a result of the suspension. He also sought to enjoin defendants from continuing to maintain or use any documentation which was obtained in violation of his rights. The matter came up for hearing on March 24, 1989. In the meantime, on March 2, 1989, defendant Chief Gates reinstated plaintiff effective March 2, 1989, pending the hearing before the board of rights.

The trial court granted the plaintiff's request for backpay as to the period from February 16, 1988, to March 3, 1989. All further relief was denied. This appeal and cross-appeal follow.

### PLAINTIFF'S CONTENTIONS

Plaintiff contends that (1) the court abused its discretion in denying him injunctive relief on the grounds that administrative remedies had not been exhausted and (2) the court abused its discretion in denying relief where it was uncontroverted that the punitive action taken against him was taken in violation of various provisions of the Public Safety Officer's Procedural Bill of Rights Act. (Gov. Code, § 3300 et seq.)

Defendant City of Los Angeles contends that it was an abuse of discretion to compel it to reimburse plaintiff for the backpay he did not receive during his suspension.

### DISCUSSION

### Plaintiff's Appeal

Plaintiff first contends that "[t]he trial court abused its discretion in refusing to issue injunctive relief pursuant to § 3309.5 on the grounds that appellant Crupi must first exhaust his administrative remedies." In this contention plaintiff urges that the trial court erroneously refused to exercise its authority under Government Code section 3309.5 to issue a preliminary injunction.[3] We disagree. Section 3309.5 is contained in the Public Safety Officers Procedural Bill of Rights Act (the Act). (Gov. Code, § 3300 et seq.) As described by the court in *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 135 [185 Cal.Rptr. 232, 649 P.2d 874]: "[T]he act sets forth a list of basic rights and protections which must be afforded all peace officers (see § 3301) by the public entities which employ them. It is a catalogue of the minimum rights (§ 3310) the Legislature deems necessary to secure stable employer-employee relations (§ 3301). [¶] In brief, the act (1) secures to officers the right to

---

[3] All statutory references herein are to the Government Code unless otherwise noted.

engage in political activity, if they so desire, when off-duty and out of uniform, '[e]xcept as otherwise provided by law' (§ 3302); (2) prescribes certain protections that must be afforded officers during interrogations which could lead to punitive action against them (§ 3303); (3) gives officers the right to review and respond in writing to adverse comments entered in their personnel files (§§ 3305, 3306); (4) allows officers to refuse to submit to a lie-detector test (§ 3307); (5) prohibits searches of officers' personal storage spaces or lockers except when they are present, or have been notified, or give their consent, or a valid warrant is obtained (§ 3309); (6) limits the circumstances in which officers may be compelled to disclose their personal financial status (§ 3308); (7) gives officers the right to an administrative appeal when any punitive action is taken against them, or they are denied promotion on grounds other than merit (§ 3304); and (8) protects officers from retaliation for the exercise of their rights under the act (*ibid.*)." (Fn. omitted.)

The Legislature enacted section 3309.5 "to allow an officer to pursue a remedy immediately in the courts for violation of these rights during the investigation and not be required to wait for judicial review after administrative consideration of those violations." (*Mounger* v. *Gates* (1987) 193 Cal.App.3d 1248, 1256 [239 Cal.Rptr. 18].) Section 3309.5 provides:

"(a) It shall be unlawful for any public safety department to deny or refuse to any public safety officer the rights and protections guaranteed to them by this chapter.

"(b) The superior court shall have initial jurisdiction over any proceeding brought by any public safety officer against any public safety department for alleged violations of this section.

"(c) In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer."

In the present case the trial court expressly acknowledged that under this section it was empowered to issue a preliminary injunction. It declined to fully do so, however, based on its conclusion that "we're in the middle of the administrative process; . . ." In the context in which this ruling was made, it is evident that the trial court concluded that until the administrative process was complete it could not determine whether the department had actually engaged in the violations about which plaintiff complains.

Contrary to plaintiff's characterization the trial court was not ruling that in fact the department had violated the applicable statutes but plaintiff could not seek redress for those violations until his administrative remedies were exhausted. The propriety of the trial court's ruling therefore rests on whether at the point plaintiff filed his complaint the department had violated the act.

In contending that such violation occurred, plaintiff first argues that the department violated section 3303, subdivision (f) because "[t]he entire disciplinary process was based upon confidential documents in that the robbery-homicide report is deemed *'confidential'*." We disagree. The report to which plaintiff alludes was prepared by the robbery/homicide division in compliance with department policy following any shooting by an officer which results in a hit. (L. A. Police Dept. Manual, § 795.30.) That report details the circumstances surrounding the subject shooting. Ultimately the report was utilized by the use of force review board, which concluded that the shooting was "out of policy."

Section 3303 of the Act delineates the manner in which an officer can be interrogated by his employing public safety department. For example subdivision (a) of that section prescribes the timing of any interrogation, subdivision (b) details who can interrogate, subdivision (c) requires disclosure of the nature of the investigation prior to an interrogation and subdivision (d) limits the permissible length of an interrogation.

Subdivision (f) on which plaintiff relies, states: "The complete interrogation of a public safety officer may be recorded. If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. *The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential. No notes or reports which are deemed to be confidential may be entered in the officer's personnel file.* The public safety officer being interrogated shall have the right to bring his own recording device and record any and all aspects of the interrogation." (italics added.)

Plaintiff selectively relies upon the italicized portions of subdivision (f). When that passage is read in the context of section 3303 in its entirety, it is clear that the italicized passage applies only in connection with the interrogation of an officer. Since nothing in the record indicates that plaintiff was interrogated, subdivision (f) could not have been violated.

Plaintiff also asserts that he "was denied the right to appear before the Review Board in violation of departmental policy . . . and in further violation of the Act in that such a proceeding was adverse to his interests." The Act entitles plaintiff only to an administrative appeal from any punitive action. (§ 3304.) Plaintiff cites no section of the Act entitling him to appear before the review board nor does our research reveal any such section.[4] Moreover, we need not determine whether the department violated its own policy by not informing plaintiff of the time and place of that hearing. As stated above, plaintiff's claim that the trial court failed to issue an adequate injunction is premised upon section 3309.5. That section empowers a court to render an injunction only to remedy violations of the act. Accordingly, unless plaintiff can establish that the department violated a provision of the Act, rather than simply one of its own internal policies, he is not entitled to a preliminary injunction under section 3309.5.

Plaintiff next argues that he "was assigned to an inside desk job for punitive purposes in violation of § 3303 (i)." Section 3303, subdivision (i) provides: "No public safety officer shall be loaned or temporarily reassigned to a location or duty assignment if a sworn member of his department would not normally be sent to that location or would not normally be given that duty assignment under similar circumstances."

As evidentiary support for this assertion plaintiff relies upon his declaration stating: "I have personally known of at least twelve officers who have been involved in shootings. The Department routinely places such officers at an inside assignment until they have been evaluated by a Department psychologist. If the psychologist releases them, they are at that point returned to the field. [¶] While not all of the shootings by these twelve officers were found to be 'out of policy', I am aware of more than one officer whose shootings were found to be 'out of policy' and who were *not* taken out of the field for a 'three-month period' prior to any disciplinary action once they were cleared by the Department psychologist."

The trial court did not abuse its discretion in impliedly concluding that this declaration was inadequate. The fact that plaintiff is aware of "more than one officer whose shootings were found to be 'out of policy' and who were not taken out of the field for a 'three-month period' " does not establish as a matter of law that in an organization as large as the Los Angeles Police Department the treatment plaintiff received was abnormal. Plaintiff fails to document a statistically significant number of similar incidents to

---

[4] As described above the review board investigates an officer involved shooting to determine whether the shooting was "in policy." The board then reports to the chief of police who decides whether to initiate an administrative process to determine whether the officer should be disciplined for the shooting.

support his assertion. In the absence of such evidence plaintiff failed to meet his burden.

■ Plaintiff next asserts that "[t]he police chief, in adopting the findings of the Review Board, generated a report to the Police Commission which was not released to [him], thus depriving him of an administrative appeal. (§ 3304 [b].)" Section 3304, subdivision (b) provides that "[n]o punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency without providing the public safety officer with an opportunity for administrative appeal." This section "does not provide for an automatic administrative appeal, but merely requires that an *opportunity* for such an appeal be provided. . . . [T]he procedural details for implementing the provisions for an administrative appeal are to be formulated by the local agency." (*Browning* v. *Block* (1985) 175 Cal.App.3d 423, 429 [220 Cal.Rptr. 763].)

As described above the chief of police, in adopting the findings of the review board that the subject shooting was "out of policy," recommended that plaintiff be subjected to "administrative disapproval." By so recommending, the chief of police initiated a process through which the matter would be adjudicated by a board of rights pursuant to section 202[5] et seq. of the Los Angeles City Charter. Thus, plaintiff *is* being afforded a right to an administrative appeal as required by section 3304.

Plaintiff's reliance upon *Hopson* v. *City of Los Angeles* (1983) 139 Cal.App.3d 347 [188 Cal.Rptr. 689] is misplaced. In *Hopson,* a citizen was shot and killed by the plaintiffs Los Angeles police officers. The shooting review board concluded that the shooting was "in policy" and the chief of police adopted the review board's conclusion. The board of police commissioners then investigated the matter and rendered a report concluding that the officers' actions violated department policy. The plaintiffs were not afforded any administrative appeal to challenge the report. We concluded that even though the report did not directly lead to discipline against the officers the negative impact the report would tend to have on the officers' careers rendered that report "punitive" in nature. Accordingly, the officers were entitled to an administrative appeal pursuant to section 3304. In contrast to the officers in *Hopson,* here plaintiff was afforded an administrative appeal through which he could attack the accuracy of the subject report.

---

[5] Section 202 in pertinent part provides: "No officer or employee of the Police Department shall be suspended, removed, deprived of his office or position, or otherwise separated from the service of the Police Department (other than by resignation), except for good and sufficient cause shown upon a finding of 'guilty' of the specific charge or charges assigned as cause or causes therefore after a full, fair and impartial hearing before the Board of Rights . . . ."

This is all that the Act requires. We, therefore, reject this contention as without merit.

■ Plaintiff next argues that "[a]ll of these documents contained adverse comments and were not released to [him], resulting in a denial of his right to review and respond to adverse comments. (§§ 3305-3306)" Section 3305 provides in pertinent part: "No public safety officer shall have any comment adverse to his interest entered in his personnel file, or any other file used for any personnel purposes by his employer, without the public safety officer having first read and signed the instrument containing the adverse comment indicating he is aware of such comment, except that such entry may be made if after reading such instrument the public safety officer refuses to sign it. Should a public safety officer refuse to sign, that fact shall be noted on that document, and signed or initialed by such officer."

Section 3306 affords a public safety officer "30 days within which to file a written response to any adverse comment entered in his personnel file."

Plaintiff argues that the department violated these sections by not providing him copies of the various documents detailed above prior to the review board hearing and the chief of police's review of that board's recommendation of administrative disapproval. We disagree. Pursuant to section 3310, the department was not obligated to follow sections 3305 and 3306 in the present case. Section 3310 provides: "Any public agency which has adopted, through action of its governing body or its official designee, any procedure which at a minimum provides to peace officers the same rights or protections as provided pursuant to this chapter shall not be subject to this chapter with regard to such a procedure."

Here, the board of rights hearing afforded plaintiff an opportunity to convince a neutral tribunal of the inaccuracy of any of the documents which he claims he did not timely receive. This procedure affords plaintiff greater protections than under sections 3305 and 3306 which simply require notice of an adverse comment and an opportunity to file a written response.[6] We, therefore, conclude that pursuant to section 3310 no violation of sections 3305 and 3306 occurred.

Lastly, plaintiff requests recovery of attorney's fees under Code of Civil Procedure section 1021.5 based upon his claim that the issues presented by

---

[6] This opportunity for administrative review of the subject document serves to distinguish the present case from *Aguilar* v. *Johnson* (1988) 202 Cal.App.3d 241 [247 Cal. Rptr. 909], relied on by plaintiff. There, the chief of police placed a citizen complaint in a file separate from the officer's personnel file. The court concluded that since the officer was neither given notice of nor an opportunity to respond to this complaint, sections 3305 and 3306 were violated.

this appeal constitute a matter of statewide importance. (See *Baggett* v. *Gates, supra,* 32 Cal.3d 128, 143 [successfully litigating whether the act applied to chartered cities entitled police officers to recover their attorneys' fees].) We disagree. As reflected by the foregoing discussion none of the issues plaintiff raises entitle him to a reversal of the preliminary injunction order. Accordingly, we reject this contention as without merit.

## CROSS-APPEAL

The department contends that "[t]he grant of injunctive relief was an abuse of the trial court's discretion." The department attacks that aspect of the trial court's ruling enjoining the department "[f]rom refusing to pay to plaintiff the back pay of which he has been deprived from February 16, 1989 to, and including, March 3, 1989."[7]

■ Plaintiff sought recovery of his backpay in the trial court based upon his claim that the department violated various provisions of the Act. In arguing that the trial court correctly ordered reimbursement of backpay, plaintiff relies upon section 3309.5 which affords the superior court original jurisdiction to remedy violations of the Act. (See *Henneberque* v. *City of Culver City* (1985) 172 Cal.App.3d 837, 842 [218 Cal.Rptr. 704] ["the policeman's bill of rights authorizes backpay when one of its provisions is violated . . . ."].) As described above, however, plaintiff failed to establish that in fact the Act was violated. Accordingly, the award of backpay was not proper under section 3309.5.

Equally without merit is plaintiff's assertion that because the department failed to pay the backpay or seek a stay it has "unclean hands" and should therefore not be able to attack the trial court's order. Plaintiff's recourse for any failure of the department to satisfy the trial court's order was through enforcement procedures in the superior court.

In sum, absent any violation of the Act, plaintiff was not entitled to recover backpay under section 3309.5.

## DISPOSITION

The order is affirmed in part and reversed in part. The trial court is directed to vacate that portion of its order enjoining the department "[f]rom

---

[7] Initially, we note that several times in its opening brief the department alludes to the fact that following the board of rights hearing held during the pendency of this appeal, plaintiff was given a seven-day suspension. Nothing in the record supports these statements. Accordingly, we will not consider those statements in passing on the propriety of the trial court's order.

refusing to pay to plaintiff the back pay of which he has been deprived from February 16, 1989 to, and including, March 3, 1989." In all other respects the order is affirmed. The department shall recover its costs on appeal.

George, Acting P. J., and Goertzen, J., concurred.

A petition for a rehearing was denied May 18, 1990, and the opinion was modified to read as printed above.