Filed 5/20/13  Abney v. Bd. of Trustees of The Cal. State University CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| RANDELL ABNEY, | B234539 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC402504) |
| v. | |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, | |
| Defendant and Respondent. | |

---

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory W. Alarcon, Judge.  Affirmed.

Law Offices of Hugh Duff Robertson, Hugh Duff Robertson; Law Offices of Allan A. Siegel and Alan A. Siegel for Plaintiff and Appellant.

Seyfarth Shaw, Colleen M. Regan and Ann H. Qushair for Defendant and Respondent.

_____

## INTRODUCTION

Plaintiff Randell Abney appeals from a judgment in favor of defendant Board of Trustees of the California State University.[1]  We affirm.

## FACTS

Plaintiff was hired as a peace officer for CSUN's Department of Public Safety (Department) in 2001.  He was promoted to Acting Corporal/Detective in 2003.  In September 2005, he was promoted to Sergeant.

Plaintiff's employment was governed by a collective bargaining agreement (CBA) between The California State University and the State University Police Association. Pursuant to the CBA, promotions are probationary for one year.  At any time during the probationary period, an employee can be returned to his or her former position.

In May 2006, Robert Rodriguez (Rodriguez), a Department employee, filed a complaint of sexual harassment and discrimination against the Department's Chief of Police, Anne Glavin.  He alleged that Chief Glavin was involved in a sexual relationship with a subordinate, Special Assistant to the Chief Christina Villalobos (Villalobos), causing her to give preferential treatment to Villalobos and create a hostile work environment for other employees, including Rodriguez.

Rodriguez's complaint lists a number of witnesses, but plaintiff is not among them.  However, at some point Rodriguez told plaintiff that he had named plaintiff as a witness.  Plaintiff thought Rodriguez said he had named plaintiff as a witness both orally and in writing.

---

[1]     Defendant was erroneously sued as California State University of Northridge.  For ease of reference, we refer to defendant throughout this opinion as CSUN.

On June 1, plaintiff received an oral reprimand for insubordinate behavior. Plaintiff and Captain Scott VanScoy had a heated discussion which was overheard by junior officers. Plaintiff angrily said to Captain VanScoy, "So what, everything changes because somebody folded?" The captain ordered plaintiff into his office, and Sergeant Douglas Flores, who heard the exchange, sent the junior officers to their watch so they would not witness the disagreement between two senior officers.

Captain VanScoy confirmed that he had a conversation with plaintiff regarding scheduling. When the captain reminded plaintiff that he was on probation, plaintiff got upset and angry. When the conversation got louder, Captain VanScoy noticed that there were other officers nearby and directed plaintiff to his office. He told plaintiff not to disagree with him in front of lower ranking officers, and to consider this an oral reprimand.

On July 17, during a scheduled exit interview with Chief Glavin, Officer Leon Ortiz-Gil alleged misconduct by plaintiff stemming from a July 6 conversation between plaintiff and Corporal Nathan Jones, in Officer Ortiz-Gil's presence. Chief Glavin assigned Captain Alfredo Fernandez to investigate the matter.

According to Officer Ortiz-Gil, plaintiff and Corporal Jones were discussing dating, and Corporal Jones said he had dated Villalobos a few times. Plaintiff said that Villalobos and Chief Glavin were in a relationship, and that Villalobos "went both ways." Officer Ortiz-Gil also heard plaintiff refer to Chief Glavin as "the thing" or "it." This occurred while they were on duty and plaintiff was acting as Officer Ortiz-Gil's field training officer. Officer Ortiz-Gil said that plaintiff also found fault with field training policies. Other officers also heard plaintiff make derogatory comments about Chief Glavin or complaining about Department policies in front of subordinates.

On July 20, in response to Rodriguez's complaint, Chief Glavin's attorney wrote to Rodriguez and a union representative handling his complaint. The attorney stated that the complaint "lacks substance and merit, however it also contains actionable defamation in that it alleges, without any sort of responsible factual support, an improper relationship between the Chief of Police and Special Assistant to the Chief Christina Villalobos. This

accusation is false and factually unsupported. It is also extremely injurious to the good name and reputation of the Chief of Police and that of Ms. Villalobos." The attorney warned that further statements to this effect would be viewed as intentional defamation.

On July 21, Captain Fernandez sent a memo to plaintiff ordering plaintiff to contact him to schedule an interview regarding an internal affairs investigation. The memo listed the Department Standards of Conduct he was alleged to have violated and specified: "A complaint was brought forth by Corporal Nathan Jones alleging that a violation of department policy(s) occurred on or about July 6, 2006 at approximately 0730 hours within the lower level of the Oviatt Library. [¶] An allegation of gross misconduct violating department policy(s) was brought forth by Sergeant Doug Flores for an incident that occurred June 1, 2006 at approximately 2200 hours within the supervisor's office within the Department of Public Safety."

Captain Fernandez interviewed plaintiff, who did acknowledge referring to a relationship between Chief Glavin and Villalobos and referring to Chief Glavin as "it," but he denied this occurred in the way the other witnesses said it occurred. He acknowledged making negative references to Department policies, but only past policies, not current ones.

On August 15, Captain Fernandez sent a report to Chief Glavin containing the results of his investigation. Captain Fernandez concluded that plaintiff had made defamatory and unprofessional comments about Chief Glavin in the presence of subordinate officers, for which the captain recommended that plaintiff be reduced in rank to police officer. Captain Fernandez also found that plaintiff made untruthful and misleading statements during the investigation, for which the captain recommended that plaintiff be terminated.

The following day, August 16, Chief Glavin sent plaintiff notice of the results of the completed internal affairs investigation. In addition, plaintiff was sent a notice of rejection during probation, stating that he had been rejected during probation from his position as sergeant. It further stated that pursuant to the CBA, he was entitled to return

4

to his previous position of corporal. Effective August 17, plaintiff was reduced in rank from sergeant to corporal.

On October 23, plaintiff was given a three-day suspension for his misconduct. Plaintiff requested a *Skelly*[2] hearing. Based on a number of factors, including plaintiff's superior record of service and questions about the evidence against plaintiff, the hearing officer recommended that plaintiff's discipline be reduced to a formal Letter of Counsel. The hearing officer added that, "[g]iven the disturbing timing of [plaintiff's] performance evaluations [July 19 and August 15] and the manner of their completion, the matter of his probationary period as sergeant should also be reconsidered."

However, on December 6, a CSUN vice-president notified plaintiff that he had reviewed the matter, including the hearing officer's report, and the three-day suspension would stand. His final decision was as follows: "I find that there is evidence that the misconduct supports the proposed sanction and that there is not a basis for modification of the proposed suspension."

Plaintiff appealed his suspension to the State Personnel Board (Board). The matter was heard on February 15, 2007. On April 30, the Board issued its decision sustaining plaintiff's suspension.

The Board disbelieved plaintiff's claims that his comments regarding Chief Glavin were flippant rather than derogatory, and that he did not mean to imply Chief Glavin had a sexual relationship with Villalobos. However, the Board did not believe that plaintiff was untruthful during the investigation and dismissed the dishonesty allegation.

The Board concluded plaintiff's conduct was harmful to CSUN and the Department. His "rude, disrespectful and defamatory comments about his Chief served to undermine her authority, and to reduce the confidence of other employees in the department's leadership team," particularly since the comments were made to subordinate officers and trainees. In addition, the Board found "[r]ecurrence of the

---

**2**      *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 215.

5

misconduct is likely. [Plaintiff] appeared to lack insight regarding the harmful effects of his derogatory comments, took no responsibility for his misconduct and showed no remorse for it, and made it clear that he still lacks respect for his superiors. [¶] Given the significant consequences of [plaintiff's] misconduct and the likelihood of its recurrence, a three-day suspension without pay is appropriate."

## PROCEDURAL BACKGROUND

Plaintiff and Rodriguez filed this action against CSUN, Chief Glavin and Captain VanScoy on November 21, 2008. They alleged causes of action for retaliation and failure to take corrective action/prevent retaliation against all defendants, and causes of action for breach of the implied covenant of good faith and for negligent hiring and retention against CSUN only. Plaintiff also alleged a cause of action against CSUN for violation of the Public Safety Officers Procedural Bill of Rights Act (POBRA, Gov. Code, § 3300 et seq.). Rodriguez subsequently reached a settlement and dismissed his action with prejudice.

The defendants answered the complaint, and the case was set for trial on February 23, 2010. On December 18, 2009, the defendants filed a motion for judgment on the pleadings as to the cause of action for negligent hiring and retention on the ground a public entity cannot be held liable for common law negligent hiring and retention. The trial court denied the motion as untimely. It also noted that to the extent plaintiff was alleging a tort claim against CSUN, granting defendants' motion "would amount to an improper summary adjudication of issues without a complete review of the evidence."

Trial was continued to December 7, 2010. On November 12, the trial court heard various motions in limine and held a bifurcated bench trial as to legal issues raised by the motions. In response to the issue of whether plaintiff could maintain his causes of action for retaliation and failure to take corrective action/prevent retaliation against Chief Glavin and Captain VanScoy, plaintiff stipulated to the dismissal of the two individual defendants, and they were dismissed from the action. The trial court also found plaintiff

6

could not maintain a private cause of action for failure to take corrective action/prevent retaliation under Government Code section 12940, subdivision (k), and it dismissed that cause of action.

On December 3, CSUN filed an ex parte application for dismissal of plaintiff's cause of action for negligent hiring and retention based on a recent appellate court decision holding such a cause of action could not be maintained unless grounded in the breach of a statutory duty.[3] The trial court granted the application but permitted plaintiff to file a written motion to amend the pleadings.

Plaintiff filed his written motion to amend the pleadings and for reconsideration of the order dismissing his cause of action for negligent hiring and retention. That motion was denied.

The case proceeded to a jury trial on December 9 on plaintiff's three remaining causes of action, retaliation, breach of the implied covenant of good faith, and violation of POBRA. On plaintiff's retaliation cause of action, the jury found that plaintiff assisted or appeared to have assisted Rodriguez in filing a sexual harassment complaint against Chief Glavin, CSUN reduced plaintiff's rank to corporal, but plaintiff's assistance of Rodriguez was not a motivating reason for CSUN's decision to reduce plaintiff's rank.

On plaintiff's cause of action for violation of POBRA, the jury found no violation of plaintiff's rights under the POBRA. As to his cause of action for breach of the implied covenant of good faith, the jury found plaintiff had a contract with CSUN, and he did all he was required to do under the contract. The jury found all the conditions occurred for CSUN's performance under the contract, but CSUN unfairly interfered with plaintiff's right to receive the benefits of the contract, and that interference harmed plaintiff. The

---

[3]    The Supreme Court subsequently granted review in that case, *C.A. v. William S. Hart Union High School Dist.* (2010) 189 Cal.App.4th 1166, review granted February 23, 2011, S188982, and reversed the appellate court's decision, *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 866. *C.A.* involved a student's claim of negligent hiring and retention, not an employee's.

7

jury awarded plaintiff $65,670 for past lost earnings and benefits.  The trial court signed a judgment in favor of plaintiff in that amount.

CSUN then filed a motion for partial judgment notwithstanding the verdict, seeking judgment in its favor on plaintiff's cause of action for breach of the implied covenant of good faith based on the lack of evidence of an employment contract containing an implied covenant of good faith.  Plaintiff filed a motion for new trial on the ground the verdict was inadequate as a matter of law and failed to include prejudgment interest.

The trial court granted CSUN's motion and denied plaintiff's motion.  It agreed that there was no evidence at trial that plaintiff was employed by CSUN pursuant to an employment contract, a prerequisite to finding a breach of the implied covenant of good faith.  The court noted the only contract referred to by witnesses at trial was a collective bargaining agreement, which could not serve as the basis for the cause of action for various reasons.  Additionally, state employees like plaintiff are employed pursuant to statute, not contract, so plaintiff's remedies are statutory, not contractual.  Based on the foregoing, the trial court found the question of damages raised in plaintiff's new trial motion irrelevant.

The trial court therefore entered judgment in favor of the defendants and against plaintiff.

## DISCUSSION

### A.  *Instruction on Violation of POBRA*

The trial court in a civil case has the duty to instruct the jury on "'all points of law necessary to a decision.'"  (*Christler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 82.)  Toward that end, "[a] party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence.  The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to

8

the particular case. [Citations.]" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.)

On appeal, our review of the propriety of a jury instruction is de novo. (*Christler v. Express Messenger Systems, Inc.*, *supra*, 171 Cal.App.4th at p. 82.) We evaluate the propriety of the instruction in the context of the instructions as a whole, and we view the evidence to which the instruction applies in the light most favorable to the appellant. (*Ibid.*; *Alcala v. Vazmar Corp.* (2008) 167 Cal.App.4th 747, 754.) We will not reverse the judgment for instructional error unless the error results in a miscarriage of justice, i.e., if there is a reasonable probability of a result more favorable to the appellant in the absence of the error. (*Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at p. 574.) Stated otherwise, we will reverse "only '"[w]here it seems probable that the jury's verdict may have been based on the erroneous instruction . . . ."'" [Citations.]" (*Ibid.*)

The trial court instructed the jury on POBRA as follows: "Public safety officers employed by CSUN, such as Plaintiff Randell Abney, are considered public safety officers for purposes of the Public Safety Officers Procedural Bill of Rights Act. The Legislature has declared that the rights and protections provided to public safety officers under the Public Safety Officers Procedural Bill of Rights Act constitute a matter of statewide concern. The Legislature further has declared that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers. In order to assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that the Public Safety Officers Procedural Bill of Rights Act be applicable to all public safety officers, as defined in this section, wherever situated within the State of California. [¶] Because Mr. Abney is a public safety officer within the meaning of the Act, he is entitled to all of the rights and privileges granted by the Public Safety Officers Procedural Bill of Rights Act." (Plaintiff's Special Instruction No. 5.)

"Under the Public Safety Officers Procedural Bill of Rights Act, punitive action means any action that may lead to dismissal, demotion, suspension, reduction in salary,

9

written reprimand, or transfer for purposes of punishment." (Plaintiff's Special Instruction No. 6.)

"A police officer who is the subject of an internal affairs investigation shall be informed of the nature of the investigation prior to any interrogation." (Defendant's Special Instruction No. 21.) "The Police Officers Bill of Rights does not apply to any interrogation of a public safety officer in the normal course of duty or other routine or unplanned contact with a supervisor." (Defendant's Special Instruction No. 24.) "A public safety department may be liable for damages under the Police Officer's Bill of Rights only if a Plaintiff proves Defendant acted maliciously and with an intent to injure a police officer." (Defendant's Special Instruction No. 18.)

The trial court refused plaintiff's proposed special instructions on what constitutes a violation of POBRA and the definition of malice. These instructions provided: "Any of the following constitutes a violation of the Public Safety Officers Procedural Bill of Rights Act:

"1. Failing to notify the public safety officer being investigated of the charges being made against him before interrogating the public safety officer.

"2. When an interrogation is conducted, the public safety officer has a right to record the interrogation and has a right to a transcribed copy of any notes, reports or complaints made by any investigator or any person. The failure to provide the public safety officer with the opportunity to record the interrogation, or the failure to provide a transcribed copy of any notes, reports or complaints made by any investigator or any person is a violation of the Act.

"3. A temporary or permanent transfer or duty assignment for the public safety officer if another member of his or her department would not normally be sent to that location or would not normally be given that duty assignment under similar circumstances.

"4. Failing to treat the investigation, or any part thereof including any reports of findings made in the investigation, as a confidential matter.

10

"5. "Failing to conduct the interrogations or investigation in a fair and impartial manner." (Plaintiff's Special Instruction No. 7.)

The trial court also refused another version of this instruction, which eliminated numbers 4 and 5 and inserted in their place: "4. Any punitive action undertaken by CSUN against Abney who has successfully completed the probationary period that may be required by CSUN without providing Abney with an opportunity for administrative appeal."

In addition, the trial court refused plaintiff's instruction, "'Malice' means that Cal State Northridge acted with intent to cause injury." (Plaintiff's Special Instruction No. 16.)

Plaintiff first contends the instructions given were insufficient to apprise the jury that the July 21, 2006 memo ordering him to schedule an interview regarding the internal affairs investigation violated POBRA, in that it failed to notify him of the potential discipline he could receive if found to have violated Department policy. Plaintiff claims that Government Code section 3304, subdivisions (d) and (f),[4] required that the memo contain that information.

Subdivision (d) of section 3304 sets forth the time limits in which an investigation of misconduct must be completed before punitive action may be taken by the employer. It states in paragraph (1): "In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed discipline by a Letter of Intent of Notice of Adverse Action articulating the discipline" within the specified time period. Subdivision (f) of section 3304 provides: "If, after investigation and any predisciplinary response or procedure, the public agency decides to impose discipline, the public agency shall notify the public safety officer in writing of its decision to impose discipline . . . ."

---

[4]     All further section references are to the Government Code, unless otherwise stated.

11

Subdivisions (d)(1) and (f) of section 3304 require the agency to notify the officer of discipline to be imposed after completion of the investigation, once the decision to impose discipline has been made. Nothing in the language of these two subdivisions suggests that an officer must be notified of potential discipline at the time the agency orders the officer to be interviewed in the course of the investigation.

*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, on which plaintiff relies, supports this conclusion. In *Mays*, which dealt with the nature of the time limits in section 3304, subdivision (d), the court noted that the normal procedure would be an investigation, a predisciplinary response and/or hearing, and then written notification of the decision to impose discipline. (*Mays*, *supra*, at p. 322.) "It would be anomalous to require the public agency to reach a conclusion regarding potential discipline prior to any predisciplinary proceedings or response on the part of the officer." (*Ibid.*)

CSUN was not required to state potential discipline to be imposed in the July 21, 2006 memo ordering plaintiff to schedule an interview regarding the internal affairs investigation. Therefore, the trial court did not err in refusing plaintiff's instruction that the failure to state potential discipline was a violation of POBRA.

Plaintiff next contends that the failure of the July 21 memo to inform him of "exactly what charges were being made against him" violated section 3303, subdivision (c), and the jury should have been instructed that such failure was a violation of POBRA.

Section 3303 sets forth the procedures to be applied "[w]hen any public safety officer is under investigation and subjected to interrogation by his or her commanding officer, or any other member of the employing public safety department, that could lead to punitive action." Subdivision (c) provides that "[t]he public safety officer . . . shall be informed of the nature of the investigation prior to any interrogation."

Nothing in section 3303, subdivision (c), requires the agency to notify the officer of "exactly what charges were being made against him" while the investigation is ongoing and prior to interrogation of the officer. It simply requires to the agency to notify the officer of the "nature of the investigation." To paraphrase *Mays*, "It would be

12

anomalous to require the public agency to reach a conclusion regarding [what charges to make against an officer] prior to any predisciplinary proceedings or response on the part of the officer." (*Mays v. City of Los Angeles*, *supra*, 43 Cal.4th at p. 322.) Again, plaintiff's claim of error in the instruction given is incorrect.

Plaintiff also contends the instruction was erroneous because it failed to inform the jury regarding violation of POBRA by reassignment in contravention of section 3303, subdivision (j). This provides: "No public safety officer shall be loaned or temporarily assigned to a location or duty assignment if a sworn member of his or her department would not normally be sent to that location or would not normally be given that duty assignment under similar circumstances." Plaintiff argues that the evidence shows that CSUN violated this provision when it placed plaintiff on night watch for four years even though Department policy was not to keep an officer on night watch for more than a year.

However, as set forth above, section 3303 sets forth the procedures to be applied "[w]hen any public safety officer is under investigation and subjected to interrogation by his or her commanding officer, or any other member of the employing public safety department, that could lead to punitive action." (See *Crupi v. City of Los Angeles* (1990) 219 Cal.App.3d 1111, 1118.) Plaintiff cites nothing which suggests that subdivision (j) applies at all times, not merely while the officer is under investigation. Since plaintiff was placed on night watch after the investigation was concluded and after punitive action—a suspension—was imposed, subdivision (j) was inapplicable. Thus, there was no error in refusing to include a violation of section 3303, subdivision (j), in the instruction on violation of POBRA.

Plaintiff further contends the jury should have been instructed on violation of section 3303, subdivision (g). The basis of his contention is that Captain VanScoy and Chief Glavin interrogated Officer Ortiz-Gil as part of their investigation, and "there was no recording or notes of this interview, depriving Plaintiff of the information sought to be used against him."

Section 3303, subdivision (g), provides: "The complete interrogation of a public safety officer may be recorded. If a tape recording is made of the interrogation, the

13

public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential. No notes or reports that are deemed to be confidential may be entered in the officer's personnel file. The public safety officer being interrogated shall have the right to bring his or her own recording device and record any and all aspects of the interrogation."

Nothing in subdivision (g) of section 3303 requires the agency to record every interview conducted during the course of the investigation and provide the officer with a copy of that recording. *San Diego Police Officers Assn. v. City of San Diego* (2002) 98 Cal.App.4th 779, on which plaintiff relies, holds "that section 3303, subdivision (g)'s reference to reports and complaints provides officers with protections similar to those enjoyed by criminal defendants, including the rights to raw notes and tape-recorded statements of witnesses preserved by City." (*San Diego Police Officers Assn.*, *supra*, at p. 785.) It does not hold that the agency must record witness statements to provide to the officer. Again, plaintiff has failed to show that the instruction on POBRA violations was incorrect.

As to plaintiff's proposed instruction on malice, the matter was adequately covered by Defendant's Special Instruction No. 18, which similarly instructed the jury that the Department may be liable under POBRA "if a Plaintiff proves Defendant acted maliciously *and with an intent to injure a police officer*." (Italics added.)

In sum, the instructions given properly covered "'all points of law necessary to a decision.'" (*Christler v. Express Messenger Systems, Inc.*, *supra*, 171 Cal.App.4th at p. 82.) Plaintiff's proposed instructions were incorrect and/or unsupported by the evidence, and the trial court did not err in refusing them. (*Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at p. 572.)

14

**B.** *Dismissal of Cause of Action for Negligent Hiring and Retention*

Since the proceedings below, the Supreme Court has held that a public entity may be held liable for negligent hiring and retention of its employees. (See *C.A. v. William S. Hart Union High School Dist.*, *supra*, 53 Cal.4th at p. 865.) Defendant argues that the trial court's ruling dismissing this cause of action was nonetheless correct as a matter of law, in that plaintiff's cause of action is barred by the Workers' Compensation Act. Plaintiff counters that the Workers' Compensation Act does not apply. Plaintiff also claims that the trial court abused its discretion in denying him leave to amend his complaint to state a cause of action for negligent hiring and retention.

The dismissal of plaintiff's cause of action for negligent hiring and retention was akin to a judgment on the pleadings. A judgment on the pleadings should be granted only where, under the facts alleged and those of which judicial notice may be granted, plaintiff has failed to state a claim for relief. (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 602; *Saltarelli & Steponovich v. Douglas* (1995) 40 Cal.App.4th 1, 5.) If judgment on the pleadings is granted, plaintiff should be granted leave to amend if he can show that he is able to state a claim for relief. (See *Ludgate Ins. Co.*, *supra*, at p. 609.) We review the judgment on the pleadings de novo and the denial of leave to amend for abuse of discretion. (*Id.* at p. 602.)

The Workers' Compensation Act (Lab. Code, § 3200 et seq.) provides that workers' compensation benefits are "the sole and exclusive remedy of an employee against an employer for injury arising out of and in the course of employment. (Lab. Code, §§ 3600, 3602.)" (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1058-1059.) Workers' compensation covers personal injuries to both the mind and body. (*Pichon v. Pacific Gas & Electric Co.* (1989) 212 Cal.App.3d 488, 494; *Howland v. Balma* (1983) 143 Cal.App.3d 899, 903 and fn. 6.) This includes emotional distress caused by on-the-job harassment of an employee or the employee's termination. (*Pichon*, *supra*, at pp. 494-498.) It does not cover injuries other than personal injuries. (*Howland*, *supra*, at p. 904.)

15

To the extent plaintiff alleged in his complaint that CSUN's negligent hiring and retention of Chief Glavin caused him emotional distress, his claim is barred by the Workers' Compensation Act. He also alleged, however, that CSUN's negligence caused him lost earnings and other employment benefits and damage to his career. These claims are not barred by the Workers' Compensation Act.

The question thus is whether plaintiff can amend his complaint to state a cause of action for negligent hiring and retention. In response to defendant's argument that plaintiff could not have alleged any facts that would state a cause of action, plaintiff asserts that this "argument puts the cart before the horse. There was no way to tell what facts could have been alleged to support the negligent hiring and retention claim because [plaintiff] was never given the opportunity to do so. To claim otherwise, you would have to be clairvoyant."

Inasmuch as neither defendant nor this court is clairvoyant, in order to show that the trial court abused its discretion in denying him leave to amend his complaint, plaintiff now bears the burden of showing how he can amend his complaint and how the amended complaint states a cause of action. (Cf. *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459-460; *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 18.) This showing may be made for the first time on appeal. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386.)

Plaintiff fails to meet his burden. He suggests ways in which the jury might have found negligent hiring and retention of Chief Glavin and complains that the jury was not allowed to consider certain actions taken by Captains Fernandez and VanScoy. He also argues that "[s]imply because the jury found no [POBRA] violations based on a decided lack of jury instructions does not indicate that a jury would not have been able to find liability on a Negligent Hiring and Retention cause of action given the opportunity to do so." But he fails to set forth what facts he could allege and how those facts state a cause of action. Since plaintiff has not shown how he can amend his complaint to state a

cause of action, we find no abuse of discretion in denial of leave to amend.  (See *Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

**C.  *Grant of Judgment Notwithstanding the Verdict and Denial of a New Trial***

A motion for a judgment notwithstanding the verdict "'"may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict.  If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied."'"  (*Hauter v. Zogarts* (1975) 14 Cal.3d 104, 110; accord, *Clemmer v. Hartford* (1978) 22 Cal.3d 865, 878.)  In ruling on the motion, the trial court cannot weigh the evidence or assess witness credibility.  (*Hauter*, *supra*, at p. 110; accord, *Clemmer*, *supra*, at p. 877.)  If there is conflicting evidence or conflicting reasonable inferences may be drawn therefrom, a judgment notwithstanding the verdict should not be granted.  (*Hauter*, *supra*, at p. 110; accord, *Clemmer*, *supra*, at pp. 877-878.)

On appeal from a judgment notwithstanding the verdict, this court also views the evidence and reasonable inferences drawn therefrom in the light most favorable to the verdict.  (*Hauter v. Zogarts*, *supra*, 14 Cal.3d at p. 111; *Jones v. McFarland Co-op Gin, Inc.* (1965) 237 Cal.App.2d 94, 97.)  The judgment will be affirmed only if there is no substantial evidence to support the verdict.  (*Hauter*, *supra*, at p. 110; *Jones*, *supra*, at p. 97.)

A covenant of good faith and fair dealing is implied in every contract.  (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683-684; *Ocean Services Corp. v. Ventura Port Dist.* (1993) 15 Cal.App.4th 1762, 1780.)  Pursuant to this covenant, the parties agree not to do anything which injures the right of the other parties to receive the benefits of the contract.  (*Ocean Services Corp.*, *supra*, at p. 1780.)

This "implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation."  (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031; accord, *Foley v. Interactive Data*

17

*Corp.*, *supra*, 47 Cal.3d at pp. 683-684, 689-690.) That is, it "'protect[s] the express covenants or promises of the contract,'" rather than general public policy. (*Racine & Laramie, Ltd.*, *supra*, at p. 1031.) "There is no obligation to deal fairly or in good faith absent an existing contract. [Citations.]" (*Id*. at p. 1032.)

Plaintiff claims he had a contractual relationship with CSUN based on the CBA.[5] In support of his claim, plaintiff relies on the principle that "[a]n employee who is hired pursuant to a collective bargaining agreement between a labor union and an employer is deemed to be a third party beneficiary, with a relationship to the employer the same as if the contract had been made directly with him. [Citations.]" (*Reynolds Elec. Etc. Co. v. Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 429, 433; *Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 636, fn. 9.)

On the other hand, "it is well settled in California that public employment is not held by contract but by statute." (*Miller v. State of California* (1977) 18 Cal.3d 808, 813.) Employment by the State of California, "including employment by the [State] University . . . , is held by statute rather than by contract. [Citation.] 'The University is a statewide administrative agency with constitutionally derived powers. [Citations.] Its employees are public employees. [Citation.] The University is administered by the [Board of Trustees]. [Citation.] [Trustees] have rulemaking and policymaking power in regard to the University; their policies and procedures have the force and effect of statute. [Citation.]' [Citation.]" (*Lachtman v. Regents of University of California* (2007) 158 Cal.App.4th 187, 198.)

Therefore, "[a] California public employee . . . cannot state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing arising out of the public employment relationship. [Citations.] The public employee's remedies are limited to those provided by statute or ordinance. [Citation.]" (*Lachtman v. Regents of University of California*, *supra*, 158 Cal.App.4th at p. 207; accord,

---

**5**    Plaintiff also claims he had a contractual relationship with CSUN based on the Department's Procedures and Guidelines. He cites no authority in support of this claim.

*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 23-24; *Kim v. Regents of University of California* (2000) 80 Cal.App.4th 160, 164-165.)

Plaintiff does not address the foregoing authorities in his briefs, instead focusing on the provisions of the CBA and the Department's Procedures and Guidelines. In light of the authorities that clearly hold that a state employee holds his position pursuant to statute, not contract, we are unconvinced by plaintiff's arguments. In the absence of evidence of a contractual relationship between plaintiff and CSUN, the trial court properly granted defendant's motion for a judgment notwithstanding the verdict on plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing. (*Hauter v. Zogarts*, *supra*, 14 Cal.3d at p. 110; *Lachtman v. Regents of University of California*, *supra*, 158 Cal.App.4th at p. 207.)

In light of this conclusion, we need not address plaintiff's contention that the trial court erred in denying him a new trial based on inadequate damages.


**D. *Dismissal of Cause of Action for Failure To Take Corrective Action/Prevent Retaliation***

Section 12940, subdivision (k), part of the Fair Employment and Housing Act, makes it an unlawful practice for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment." The trial court dismissed plaintiff's cause of action under this subdivision based on its interpretation of a decision of the Department of Fair Employment and Housing as barring a private cause of action under the subdivision.

Defendant concedes the trial court was incorrect, and an individual may bring a cause of action under subdivision (k) of section 12940. Inasmuch as the cause of action was dismissed prior to trial, we will treat the dismissal in the same manner as an order sustaining a demurrer or a judgment on the pleadings. That is, we examine de novo the facts alleged and those of which judicial notice may be granted to determine whether plaintiff has alleged facts which state a claim for relief. (*Ludgate Ins. Co. v. Lockheed*

19

*Martin Corp.*, *supra*, 82 Cal.App.4th at p. 602; *Saltarelli & Steponovich v. Douglas*, *supra*, 40 Cal.App.4th at p. 5.)

In *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, the court held that section 12940 "creates a tort that is made actionable by statute." (*Trujillo*, *supra*, at p. 286.) Thus, plaintiff must allege "the usual elements of a tort, enforceable by private plaintiffs . . . : defendant['s] legal duty of care toward plaintiff[], breach of duty (a negligent act or omission), legal causation, and damages to the plaintiff. [Citation.]" (*Id*. at pp. 286-287.) *Trujillo* also held specifically that a factual prerequisite to liability under section 12940 is that discrimination or harassment actually occurred and caused damage to the plaintiff. (*Id*. at p. 289.)

Plaintiff acknowledges that the jury found that no retaliation occurred. Under *Trujillo*, without retaliation, CSUN could not be liable to failure to prevent retaliation. Plaintiff's only response is that, "given the numerous incorrect rulings that occurred through the case and trial, on a new trial, a jury could find on the retaliation claim and thus the failure to prevent claim." Plaintiff's response is inadequate.

First, there were not "numerous incorrect rulings" in this case, and plaintiff raised no claims of error with respect to the verdict on his retaliation cause of action. Second, plaintiff moved for a new trial based on inadequate damages on his breach of the implied covenant cause of action. A new trial would not include his cause of action for retaliation.

Inasmuch as there is no factual basis for a cause of action for failure to prevent retaliation, the trial court's dismissal of that cause of action must be affirmed. (*Ludgate Ins. Co. v. Lockheed Martin Corp.*, *supra*, 82 Cal.App.4th at p. 602; *Saltarelli & Steponovich v. Douglas*, *supra*, 40 Cal.App.4th at p. 5.)

20

**DISPOSITION**

The judgment is affirmed.  Defendant is awarded costs on appeal.

JACKSON, J.

We concur:

PERLUSS, P. J.

WOODS, J.

21